919 F.2d 469
 18 Fed.R.Serv.3d 112, RICO Bus.Disp.Guide 7633
 Bettye HARTZ and Carroll Hartz, Plaintiffs-Appellants,
v.
Albert Brooks FRIEDMAN, Albert Brooks Friedman, Ltd., Dawn
Elizabeth Wellman, Max Cohen, and Law Firm of
Cohen and Thiros, Defendants-Appellees.
 Nos. 90-1042, 90-1043.
 United States Court of Appeals,
Seventh Circuit.
 Argued Sept. 27, 1990.
Decided Dec. 4, 1990.
 
 William P. Hapaniewski, Merrillville, Ind., for plaintiffs-appellants.
 Robert F. Parker, Beckman, Kelly & Smith, Hammond, Ind., for Albert B. Friedman, and Albert Brooks Friedman, Ltd.
 David C. Jensen, Eichhorn, Eichhorn & Link, Hammond, Ind., for Dawn E. Wellman, Max Cohen and Law Firm of Cohen and Thiros.
 Before WOOD, Jr., and EASTERBROOK, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.
 FAIRCHILD, Senior Circuit Judge.
 
 
 1
 Plaintiffs Bettye Hartz and her husband, Carroll, employed defendant Friedman, an Illinois lawyer, to recover damages for injuries Bettye sustained in 1980 and for medical malpractice in diagnosis and treatment of an injury she suffered in 1976. In 1981 Friedman brought an action on those claims in an Indiana court. Friedman, however, had failed to present the malpractice complaint to a medical review panel as required by Indiana law. Ind.Code Sec. 16-9.5-9-2. On that account, the malpractice claims were dismissed without prejudice in 1983.
 
 
 2
 In 1985 the Hartzes, on Friedman's recommendation, additionally employed Indiana lawyers Wellman and Cohen, and the personal injury claims were then settled. By that time, Friedman had brought the malpractice complaint against Dr. Alexander Kott and two others before a medical review panel. On August 16, 1986, the panel issued its opinion, finding evidence of negligence as to Dr. Kott, but not the others. Plaintiff had ninety days within which to bring suit. Ind.Code Sec. 16-9.5-9-1. Friedman, Wellman, and Cohen asked the Hartzes to advance $8,500, apparently for expenses of suit, but the Hartzes refused. No action was brought and the statute of limitations expired in November, 1986.
 
 
 3
 The Hartzes brought the present action against Friedman, Wellman, and Cohen and their law firms in 1988. They attempted to state a RICO claim as authorized by 18 U.S.C. Sec. 1964(c), within the jurisdiction of the federal district court. They also asserted state law claims for professional malpractice, breach of fiduciary relationship, and breach of contract, invoking pendent jurisdiction.
 
 
 4
 On motion of defendants, the district court dismissed the RICO count with prejudice and the pendent claims without prejudice. The court found sanctions against plaintiffs' counsel appropriate under Rule 11, and awarded $1,734 in favor of defendant Friedman and $8,075 in favor of defendants Wellman and Cohen and their firm. The Hartzes and their counsel appealed.
 
 DISCUSSION
 
 5
 The district court might well have dismissed the plaintiffs' complaint on the ground that it was an egregious violation of Rule 8(a) of the Federal Rules of Civil Procedure. Rule 8(a) requires that a complaint set forth "a short and plain statement of the claim." The plaintiffs' complaint is neither short nor plain. It contains 125 pages (323 paragraphs) including a mass of details which might be relevant and appropriate at trial, but which are clearly surplusage in stating a claim. The volume and form of the pleading make it difficult to sort out the necessary elements of a RICO claim. Nonetheless, we will treat the complaint on its merits because the district court chose to do so and because doing so will dispose of the RICO claim with finality. See Jennings v. Emry, 910 F.2d 1434, 1436 (7th Cir.1990).
 
 
 6
 The plaintiffs claim the defendants violated Sec. 1962(c) of RICO.[1] A violation of this section requires "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985) (footnote omitted). The district court decided that these elements were not shown.
 
 
 7
 An enterprise is "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. Sec. 1961(4). The Supreme Court has said that an enterprise is an "ongoing organization" and that "the various associates function as a continuing unit." United States v. Turkette, 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981). The Seventh Circuit recently said an enterprise requires "an ongoing 'structure' of persons associated through time, joined in purpose, and organized in a manner amenable to hierarchial or consensual decision-making." Jennings v. Emry, 910 F.2d 1434, 1440 (7th Cir.1990) (no enterprise because plaintiffs did not allege the structure which the American Medical Association, the Indiana State Police and the Attorney General of Indiana used to persecute Indiana chiropractors). An enterprise is not merely a conspiracy; an enterprise must involve more than an agreement to commit a pattern of racketeering activity. United States v. Neapolitan, 791 F.2d 489, 500 (7th Cir.), cert. denied, 479 U.S. 939, 940, 107 S.Ct. 421, 422, 93 L.Ed.2d 371, 372 (1986).
 
 
 8
 The law firms with which the defendants were associated might well meet the requirements for being "enterprises," but that is not the plaintiffs' claim. The plaintiffs allege that Friedman, Cohen, and Wellman formed an association in fact that provided legal services (Complaint p 192A). The complaint does not allege that Friedman associated with Wellman and Cohen apart from the Hartzes' case. The association did no more than continue the representation of the Hartzes, earlier begun by Friedman. Whether this ad hoc association for carrying on the Hartz litigation has the structure, purpose, and continuity needed in order to qualify as an "enterprise" under RICO is open to question. We need not resolve it, however. As will be seen, we find no pattern of racketeering activity.
 
 
 9
 The next requirement of RICO is that the defendants engage in a pattern of racketeering activity. The pattern requirement is difficult to define and requires courts to use common sense. H.J., Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 109 S.Ct. 2893, 2901, 106 L.Ed.2d 195 (1989); United States Textiles, Inc. v. Anheuser-Busch Companies, Inc., 911 F.2d 1261, 1269 (7th Cir.1990). In H.J., Inc., the Supreme Court said that the continuity plus relationship test first described in Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285, n. 14, 87 L.Ed.2d 346 (1985), was still valid. H.J., Inc., 109 S.Ct. at 2900. Predicate acts are related if the acts " 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.' " H.J., Inc., 109 S.Ct. at 2901 (quoting 18 U.S.C. Sec. 3575(e) (definition of pattern for Dangerous Special Offender Sentencing Act)). Continuity is more difficult to explain. The Supreme Court said multiple schemes were not necessary, but plaintiffs had to prove a "continuity of racketeering activity, or its threat." Id. Whether there is continuity depends on the facts of each case. Id. at 2902.
 
 
 10
 The Seventh Circuit has decided several cases since H.J., Inc. and has in each case concluded that the necessary continuity was absent. United States Textiles, 911 F.2d at 1269 (no pattern where criminal activity does not present a significant social threat); New Burnham Prairie Homes, Inc. v. Village of Burnham, 910 F.2d 1474, 1478-79 (7th Cir.1990) (no pattern where there is one injury to one person and no threat of future fraud); Olive Can Co. v. Martin, 906 F.2d 1147, 1151 (7th Cir.1990) (no pattern where defendants were involved in fraud to pay back a business loan and fraud was not the regular way of doing business); Management Computer Services, Inc. v. Hawkins, Ash, Baptie & Co., 883 F.2d 48, 51 (7th Cir.1989) (no pattern where all wrongdoing occurred at one time); Sutherland v. O'Malley, 882 F.2d 1196, 1205 (7th Cir.1989) (no pattern where defendant is "an 'isolated offender' engaged in a 'one-shot' effort to inflict a single injury").
 
 
 11
 Since the Supreme Court decided H.J., Inc., the Seventh Circuit has not found patterns to exist in any civil RICO cases which have presented the issue. The most recent pre-H.J., Inc. case in which the Seventh Circuit found a pattern of racketeering is Ashland Oil, Inc. v. Arnett, 875 F.2d 1271, 1279 (7th Cir.1989). Ashland Oil involved defendants who committed a variety of predicate acts (wire fraud, bankruptcy fraud, and arson). They defrauded four victims in the same manner through independent sequential actions over a period of four months. Their use of several unlawful means separated the case from "ordinary business fraud." Id. at 1279.
 
 
 12
 In all of its cases, the Seventh Circuit has evaluated the pattern requirement with reference to four factors: "(1) the number and variety of predicate acts and the length of time over which they were committed; (2) the number of victims; (3) the presence of separate schemes; and, (4) the occurrence of distinct injuries." United States Textiles, 911 F.2d at 1266 (citing Morgan v. Bank of Waukegan, 804 F.2d 970, 975 (7th Cir.1986)).
 
 
 13
 The RICO statute defines "racketeering activity," often referred to as predicate acts, as any one of several federal or state offenses, including wire and mail fraud. 18 U.S.C. Sec. 1961(1). Plaintiffs' counsel seems to rely on a number of interstate telephone calls and mailings as acts of racketeering, making up a pattern. He has not realized that in pleading a violation of 18 U.S.C. Sec. 1341 (mail fraud) and Sec. 1343 (wire fraud) he must identify some scheme or artifice to defraud which is furthered by each alleged use of the mails or interstate transmission by wire. We have found allegations of sixteen telephone calls and mailings. Some of them were clearly not in furtherance of either scheme which can be found in the complaint. Some may have been, though that does not clearly appear. We shall assume, however, that there was a sufficient pleading of some number of violations of Secs. 1341 or 1343 in excess of two.
 
 
 14
 The Seventh Circuit, however, does not look favorably on relying on many instances of mail and wire fraud to form a pattern. In Lipin Enterprises Inc. v. Lee, 803 F.2d 322 (7th Cir.1986), the court did not find a pattern although twelve predicate acts were alleged:
 
 
 15
 Mail fraud and wire fraud are perhaps unique among the various sorts of "racketeering activity" possible under RICO in that the existence of a multiplicity of predicate acts (here, the mailings) may be no indication of the requisite continuity of the underlying fraudulent activity.
 
 
 16
 Id. at 325 (Cudahy, J., concurring).
 
 
 17
 In their brief, the plaintiffs argue they could also prove a violation of the Hobbs Act, 18 U.S.C. Sec. 1951, which prohibits an attempt to affect interstate commerce by extortion. They so claimed in a proposed amended complaint. We need not explore whether they sufficiently alleged a Hobbs Act violation because it would add nothing to the relationship and continuity required to form a pattern. The requests for money which plaintiffs contend were a Hobbs Act violation were the same conduct already covered by some of the allegations of wire fraud.
 
 
 18
 The second factor requires a consideration of the number of victims. Clearly, the Hartzes were the only victims. The third factor asks whether there are separate schemes, although the definition of a scheme may be as difficult to explain as the definition of a pattern, H.J., Inc., 109 S.Ct. at 2901 n. 3. The plaintiffs alleged that the defendants devised two schemes to defraud. The complaint, in paragraphs 191A to 192, alleges that there was a scheme to conceal from plaintiffs a certain lawsuit against plaintiffs which arose out of defendant Friedman's failure to appear at a deposition he had noticed in preparation for the medical review panel. In this lawsuit the parties attending the deposition obtained an award of their expenses.
 
 
 19
 The complaint alleges that the injury resulting from this scheme is that the plaintiffs would have dismissed the defendants had they known of the matter. This seems no more than a claim that plaintiffs were deprived of the intangible right of honest services of their lawyers. Before enactment of 18 U.S.C. Sec. 1346 (Nov. 18, 1988), however, a scheme to defraud for the purpose of 18 U.S.C. Sec. 1341 (and necessarily, also Sec. 1343) was "limited in scope to the protection of property rights." McNally v. United States, 483 U.S. 350, 358-59, 107 S.Ct. 2875, 2876, 97 L.Ed.2d 292 (1987).
 
 
 20
 It happens, however, that plaintiffs alleged that defendants retained a portion of the money received in settlement of the personal injury claims to apply to expenses which plaintiffs claim were not satisfactorily explained. Plaintiffs also allege that the award of expenses to those attending the deposition was paid out of "Enterprise" funds. It is conceivable that plaintiffs meant that the award was paid out of part of the settlement money which was properly theirs. If so, the scheme could be treated, notwithstanding McNally, as a scheme to defraud for the purpose of Secs. 1341 and 1343. Any mailing or interstate telephone calls in furtherance of the scheme would be predicate acts for the purpose of RICO.
 
 
 21
 Paragraphs 273A, 274, 275, and 279 might be read, liberally construed, as pleading a scheme to defraud plaintiff of money by demanding an advance of $8,500 in order to hire certain assistance in the malpractice case which defendants really did not intend to employ. It would follow that mailings or interstate telephone calls in furtherance of this scheme would be predicate acts for the purpose of RICO. Some such communications were alleged, at least in general terms.
 
 
 22
 We then assume, perhaps with excessively generous interpretation, that some small number of mailings and interstate telephone calls in furtherance of each scheme are sufficiently alleged as predicate acts.
 
 
 23
 The final factor is whether the plaintiffs experienced distinct injuries. The plaintiffs may have had a meritorious claim for medical malpractice. They have lost the opportunity to pursue it, allegedly through the failure of defendants to perform their professional duties. The complaint also suggests that defendants persuaded the plaintiffs to settle their personal injury claims for too low a figure. How these two injuries arose out of the schemes alleged, or the mailings and interstate telephone calls which may have furthered them, is hard to see. The Hartzes were also injured if the defendants used money belonging to the Hartzes to pay the judgment which arose out of Mr. Friedman's failure to appear at a deposition.
 
 
 24
 Taking together all the predicate acts alleged, and applying the four factors referred to, we conclude that there was neither the relationship nor continuity among the predicate acts necessary to form a RICO pattern. Except for the belated claim that some of the communications violated the Hobbs Act, all the predicate acts constituted mail or wire fraud. Those relating to each scheme occurred over a short period of time, and the entire "enterprise" lasted a year and a half at most. The Hartzes were the only victims. The two schemes were unrelated, except that both were incidents of defendants' representation of the Hartzes.
 
 
 25
 In an effort to improve their claim, the plaintiffs bring up facts that were not in the complaint but which they included in a proposed amended complaint that they were not allowed to file. The plaintiffs claim they have discovered two additional instances of wrongdoing by Friedman. In the first instance, Friedman allegedly caused a female client to agree to a fee by using "undue influence, coercion, misrepresentation, and intimidation." Friedman and members of his firm told the client that she would not be able to get a divorce and would be left to represent herself unless she agreed to excessive fees. When Friedman sent the client a billing statement, it included time during which Friedman was engaged in sexual relations with her. The second instance is that Friedman was incarcerated for contempt of court orders in the case of Friedman v. Friedman.
 
 
 26
 These allegations spell out no scheme to defraud, and no mailings nor interstate wire communications, except for the reference to sending a bill to the client. Thus they do not allege any additional predicate acts. It seems apparent that they are unrelated to the conduct of the Friedman-Wellman-Cohen "enterprise."
 
 
 27
 After the entry of judgment dismissing the complaint, the plaintiffs moved to alter and amend the judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. The motion did not address the merits except to ask for time in which to prepare and file an amended complaint. They filed a proposed amended complaint fourteen days after judgment. The court noted that the Rule 59(e) motion failed to set forth even one ground for granting it. He refused to reopen the judgment and denied leave to amend, both because the motion was unsupported and because the proposed amended complaint did not cure the defects in the original. We can find no abuse of discretion.
 
 
 28
 The plaintiffs also argue that the district court erred by not allowing them to respond to Friedman's motion to set aside the entry of default as to him. Thirty-two days after the service of the summons and complaint on Friedman, the Hartzes applied to the clerk for an entry of default. The clerk then notified Friedman of the entry of default, and Friedman responded within six days. Although Friedman did not initially follow the correct procedure for setting aside an entry of default, he eventually made showing that he had a good faith belief that the service of summons had not been perfected and that he had meritorious defenses. The court then set aside the entry of default. The plaintiffs have not demonstrated any abuse of discretion.
 
 
 29
 We affirm the judgment.
 
 
 30
 The plaintiffs' counsel brought his own appeal from the award of Rule 11 sanctions against him. We find no abuse of discretion. As the district court noted, the plaintiffs' complaint excessively details a serious dispute with the defendants which may form the basis for relief in state court, but which does not state a claim for which relief can be granted under 18 U.S.C. Sec. 1962(c). While it does not appear that this complaint was filed for any improper purpose or in bad faith, it does appear that counsel neglected to make reasonable inquiry into the applicable law before filing. Also, counsel filed a motion to strike the defendants' motion to dismiss. The defendants' motion to dismiss raised substantial questions of law aimed at testing the sufficiency of the complaint, but the motion to strike cited no authority, and the court deemed it "obviously a frivolous gesture" which was also sanctionable.
 
 
 31
 We also grant the defendants' motion for sanctions under Rule 38 of the Federal Rules of Appellate Procedure. In order to award Rule 38 sanctions, we must make two determinations: (1) is the appeal frivolous, and (2) are sanctions appropriate. Mays v. Chicago Sun-Times, 865 F.2d 134, 138 (7th Cir.), cert. denied, --- U.S. ----, 110 S.Ct. 259, 107 L.Ed.2d 209 (1989). An appeal is frivolous "when the result is fore-ordained by the lack of substance to the appellant's arguments." Mars Steel Corp. v. Continental Bank N.A., 880 F.2d 928, 938 (7th Cir.1989) (en banc ). We must evaluate the arguments that the appellants actually made, and not the arguments they could have made. Beverly Gravel, Inc. v. DiDomenico, 908 F.2d 223, 225 (7th Cir.1990). The district court judge clearly expressed his conclusion that the plaintiffs had not "established that there is any threat of continuing racketeering activity," and cited many cases in support. Mem. op. at 8. The plaintiffs, however, made no attempt to distinguish any of the cases and briefly described the four factors we addressed above without explaining why the factors suggested that this case met the continuity requirement.
 
 
 32
 Thus, the appeal was frivolous. Sanctions are appropriate if "the appeal was prosecuted with no reasonable expectation of altering the district court's judgment and for purposes of delay or harassment or sheer obstinacy." Reid v. United States, 715 F.2d 1148, 1155 (7th Cir.1983). Although Rule 38 sanctions may often not be appropriate in RICO cases because there is no clear definition of key terms like "enterprise" and "pattern," in this case the plaintiffs could have had no reasonable expectation of altering the district court's judgment in light of the arguments they made. The plaintiffs did not rely on any case law in support of their arguments, and much of their brief was merely extended quotations from memoranda they had submitted to the district court. These sanctions, like the Rule 11 sanctions, will be imposed on plaintiffs' attorney. The defendants shall submit with their bill of costs a comprehensive statement of reasonable attorney's fees incurred in defending these appeals. Plaintiffs and their counsel will have ten days thereafter to submit any objection to the claimed fees.
 
 
 33
 Accordingly, we AFFIRM the judgment and order for sanctions and GRANT defendants' motions for Rule 38 sanctions.
 
 
 
 [1]
 It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt
 18 U.S.C. Sec. 1962(c).