Johnie McDONALD, Plaintiff–Appellant,

v.

Alan T. SCHENCKER, Allan L. Grant
and Grant & Schencker, P.C.,
Defendants–Appellees.

No. 93–2156.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 28, 1993.

Decided March 10, 1994.

Terence J. Tyksinski, Chicago, IL, Robert A. Handelsman (argued), Chicago, IL, for plaintiff-appellant.

Alan T. Schencker (argued), Alan L. Grant, Grant & Schencker, Deerfield, IL, for defendants-appellees.

Before CUDAHY, RIPPLE and MANION, Circuit Judges.

MANION, Circuit Judge.

Johnie McDonald sued her attorney, Alan T. Schencker, his partner, Allan L. Grant, and their firm, Grant and Schencker, P.C., alleging that Schencker's excessive bill and certain actions taken by him to secure its payment violated the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 *et seq.*, as well as several pendant state laws. She sought damages in the amount of $11,000 and attempted to treble these under 18 U.S.C. § 1964(c). The district court granted Schencker's motion to dismiss because McDonald failed to suffi-

ciently allege a pattern of racketeering. For the following reasons, we affirm. We also deny Schencker's motion for appellate sanctions under Fed.R.App.P. 38.

## I.

In May and June of 1991, McDonald retained attorney Schencker to handle two different legal matters. The first involved the sale of certain Chicago real estate owned by McDonald. On May 31, 1991, McDonald gave Schencker an earnest money check in the amount of $5,000 which had been endorsed by both her and the purchaser, and instructed Schencker to hold this check in escrow until the sale had closed. Schencker promptly deposited the check in the law firm's account. The second matter involved defending an appeal from a civil judgment in the Cook County Circuit Court in which McDonald was the plaintiff/counter-defendant. On June 4, 1991, McDonald retained Schencker to represent her in the appeal. For his appellate services, Schencker requested that he be paid $6,000 in advance, which McDonald did in six $1,000 installments.

The controversy in this case came about on August 27, 1992, when Schencker mailed McDonald an itemized billing statement for his appellate services. This statement listed 110.8 hours at $225 per hour for a total of $24,900. McDonald refused to pay, claiming that the bill was fraudulent. According to McDonald, this was because Schencker billed an excessive amount of time in light of the issues raised on appeal, charged an excessive hourly rate as compared to the going rate of other attorneys in the Chicago area, and failed to give McDonald credit for the $6,000 she had paid in advance. She promptly fired Schencker.

Shortly before this confrontation, the sale had closed on McDonald's Chicago property. Schencker, however, had never paid McDonald the $5,000 held in escrow. On Sep-

tember 30, 1992, McDonald sent Schencker a letter demanding that he do so. Upon receipt of the letter, Schencker informed McDonald that he was applying (without having obtained any prior approval) the $5,000 towards his unpaid bill for the work in the Cook County appeal.

McDonald proceeded on two fronts. She first filed a formal complaint with the Illinois Attorney Registration and Disciplinary Commission ("ARDC"). She then filed a six-count complaint in the United States District Court for the Northern District of Illinois. This complaint alleged various state law claims for such things as conversion, fraud and breach of fiduciary duty. The complaint also contained a RICO claim, which formed the sole basis for federal jurisdiction. Thus, we first need to consider whether count one of the complaint constituted a valid claim under RICO.

In her original complaint, McDonald alleged as predicate acts of racketeering activity that Schencker had mailed a "fraudulent" billing, and had wrongfully converted the escrow funds. Later, she amended her complaint to add another act of racketeering—perhaps sensing that two predicate acts would not be enough. See, e.g., Uni*Quality, Inc. v. Infotronx, Inc., 974 F.2d 918, 922 (7th Cir.1992) (two acts of racketeering, while necessary to make a pattern, are normally not sufficient). Before submitting his first bill, Schencker had petitioned for and obtained leave to file a sur-reply brief in the Cook County appellate matter. McDonald alleges that this constituted an additional scheme to defraud her of her money through the U.S. mails because, had she agreed to this additional brief, this would have provided Schencker yet another opportunity to bill McDonald at the "fraudulently" excessive rate of $225 per hour.[1]

Following a motion by Schencker, the district court dismissed McDonald's amended complaint. At the hearing on Schencker's motion, the district judge stated that al-

---

1. Although Schencker had obtained leave to file this additional brief before he had submitted his appellate bill, Schencker's bill does not include any entries for the work done in filing the motion for leave with Illinois appellate court, nor, for that matter, for any work done in writing the

actual brief after leave was granted. From oral argument we learned that Schencker had apparently not done any work on this brief before submitting his bill, and that any work done would have been reflected in future billings.

though McDonald's allegations, if true, did indicate improper behavior on the part of Schencker, they did not state a claim under RICO. The district court found that this was a single victim, single scheme, single injury case which was wholly outside the scope of RICO. The court also found that even if McDonald had sufficiently pleaded a number of predicate bad acts, she had utterly failed to demonstrate how Schencker's actions posed a threat of continuing future criminal acts against McDonald. The district court dismissed McDonald's RICO claims and as a result refused to exercise jurisdiction over her state law claims. Following a motion by McDonald, the district court entered an order reflecting that its dismissal of the RICO claim was with prejudice and the state claims without prejudice, thus making its decision final.

In her appeal, McDonald claims that the district court erred in its determination that these allegations failed to sufficiently plead a pattern of racketeering. Schencker cross-appeals, claiming that we should sanction McDonald under Fed.R.App.P. 38 for filing a frivolous appeal.

## II.

As this case comes to us from a dismissal of McDonald's first amended complaint, we must review the district court's dismissal *de novo*, taking all facts alleged in the complaint and the inferences reasonably drawn from them in the light most favorable to the non-movant McDonald. *See Schiffels v. Kemper Fin. Serv., Inc.,* 978 F.2d 344, 346 (7th Cir. 1992); *Uni\*Quality,* 974 F.2d at 920.

### A. Predicate Acts

■ McDonald argues that her complaint sufficiently stated a cause of action for RICO

pursuant to 18 U.S.C. § 1962(c).[2] To make out a violation of § 1962(c) it was incumbent upon McDonald to demonstrate "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *See Midwest Grinding Co., Inc. v. Spitz,* 976 F.2d 1016, 1019 (7th Cir.1992) (citing *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985)). A pattern of racketeering activity consists of at least two predicate acts of racketeering committed within a ten-year period. *See* 18 U.S.C. § 1961(5). RICO defines "racketeering activity," also referred to as "predicate acts," as acts indictable under any one of several federal or state offenses, including mail fraud under 18 U.S.C. § 1341, and wire fraud under 18 U.S.C. § 1343. *See Midwest Grinding,* 976 F.2d at 1019.

■ In her amended complaint, McDonald relies upon a number of mailings as the separate acts of mail fraud needed to provide the requisite amount of racketeering activity. To sufficiently plead an indictable act of mail fraud under 18 U.S.C. § 1341, it was up to McDonald to allege that: (1) the defendant has participated in a scheme to defraud and (2) the defendant has mailed or has knowingly caused another to mail a letter or other matter for the purpose of executing the scheme. *See United States v. Swinson,* 993 F.2d 1299, 1300 (7th Cir.1993). Although the district court apparently assumed, and Schencker never challenged, that McDonald sufficiently alleged three acts of mail fraud, after examining the substance of McDonald's allegations, we conclude otherwise.

### 1. False and Fraudulent Billing

■ The gist of McDonald's first allegation of racketeering activity is that, with regard to the Cook County appellate matter, Schencker billed her for an inordinate

---

2. Although McDonald's amended complaint alleged a violation of 18 U.S.C. § 1962(a), we read her complaint to allege a violation of 18 U.S.C. § 1962(c). *See Bartholet v. Reishauer A.G. (Zurich),* 953 F.2d 1073, 1078 (7th Cir.1992) (when reviewing a complaint for failure to state a claim, our task is not to determine if plaintiff pleaded the correct statute; instead "a court should ask whether relief is possible under any set of facts that could be established consistent with the allegations."). Thus, throughout our opinion we

shall refer to her action as one pleaded under § 1962(c).

Moreover, given our eventual determination that McDonald has failed to allege a pattern of racketeering, then, by definition, McDonald cannot sufficiently allege under § 1962(a) that she was injured by Schencker's investing money "derived, directly or indirectly, *from a pattern of racketeering activity....*" 18 U.S.C. § 1962(a) (emphasis added).

amount of time at an excessive fee and failed to give her credit for an advance already paid. This is hardly mail fraud. Perhaps Schencker is slow or inefficient, which led him to spend the amount of hours that he did in preparing his appeal, but McDonald does not allege that Schencker did not actually accumulate these hours. This does not appear to be a case where a bill has been sent for work never done. Exhibits B2–B4 detail the time spent by Schencker in preparing this matter. In her amended complaint, McDonald did not allege that Schencker never engaged in this work. Of course, McDonald's contention that Schencker's fee of $225 per hour is grossly excessive, if true, may constitute a violation of Rule 1.5(a) of the Illinois Rules of Professional Conduct ("A lawyer's fee shall be reasonable."). But these allegations, standing alone, do not appear to constitute a scheme to defraud for purposes of mail fraud.[3] In addition, the mere allegation that Schencker failed to give McDonald credit for the $6000.00 advance by itself is insufficient to allege a scheme to defraud. Although the Federal Rules provide for very liberal pleading, Rule 9(b) of the Federal Rules of Civil Procedure requires RICO plaintiffs, like any other plaintiffs pleading fraud in the federal courts, to plead "all averments of fraud with particularity." *Midwest Grinding,* 976 F.2d at 1020. "Most importantly, complaints charging fraud must sufficiently allege the defendant's fraudulent intent." *Graue Mill Dev. v. Colonial Bank & Trust Co.,* 927 F.2d 988, 992 (7th Cir.1991). There is simply nothing on the face of McDonald's complaint which gives us any basis for believing that Schencker possessed a fraudulent intent in failing to credit her for the amounts she had already paid. Therefore, this allegation does not constitute mail fraud, and cannot be considered a predicate act for purposes of RICO.

### 2. Conversion of the Escrow Account

■ McDonald next alleges that Schencker converted the funds from the escrow account, thus constituting a second predicate act of racketeering. At the outset, we note that conversion is not a *per se* RICO predicate act because it is not one of the listed racketeering activities under 18 U.S.C. § 1961(1). No matter, alleges McDonald, for due to all the mailing that surrounded this event, surely it can be recast as mail fraud, a well-established RICO racketeering activity. But simply throwing in several mailings says nothing about whether there was a scheme to defraud. On its face, McDonald's complaint merely alleged that, in responding to McDonald's letter demanding payment of the $5000 in escrow, Schencker told McDonald over the phone that he was applying these funds to the as yet unpaid appellate services bill. This does not plead a scheme to defraud. Had McDonald alleged, for example, that Schencker had engaged in some sort of conduct so as to intentionally mislead her about his conversion of the escrow funds to his bill, this would be a different matter altogether. *See, e.g., Appley v. West,* 832 F.2d 1021, 1028 (7th Cir.1987) (finding a scheme to defraud for purposes of the mail fraud statute where each mailing served to *conceal* the conversion of funds). But as it stands, this portion of her complaint does not allege any acts of deceit or chicanery on the part of Schencker which would give rise to a scheme to defraud for the purposes of mail fraud.[4]

---

3. McDonald also threw in, in somewhat boilerplate fashion, the allegation that in charging an excessive fee, Schencker breached his fiduciary obligations, which, in turn, constituted a scheme to defraud. R. 2 at 3 ¶ 11. This court has previously observed that the words "scheme or artifice to defraud" under 18 U.S.C. § 1341, are not satisfied by merely alleging unethical conduct. *See United States v. Holzer,* 816 F.2d 304, 309 (7th Cir.1987). *See also United States v. Bronston,* 658 F.2d 920, 927 (2d Cir.1981) ("mere breach of fiduciary duty, standing alone, may not necessarily constitute mail fraud").

4. What could be in question here are Schencker's ethical obligations to resolve all billing disputes with his clients, as well as his obligation to keep his and his clients' funds separate, *see, e.g.,* Illinois Rules of Professional Conduct Rule 1.15(a) ("a lawyer shall hold property of clients ... that is in the lawyer's possession in connection with a representation separate from the lawyer's own property"). We draw no inferences or conclusions on this. McDonald will be able to develop these issues more fully in the disciplinary action she filed with the Illinois Disciplinary Commission.

Moreover, even if McDonald's allegations could somehow be construed as a plausible scheme to defraud, she has failed to show how any subsequent mailings were "in furtherance of" this scheme. McDonald even admits in her reply brief that once Schencker told her he was keeping the money, the "scheme" was complete. It is clear, therefore, that any subsequent mailings had nothing to do with the execution or perpetuation of the scheme, which leaves McDonald's second allegation of mail fraud without the necessary jurisdictional element of mailing. *See United States v. McClellan,* 868 F.2d 210, 216 (7th Cir.1989) ("A mailing is not in furtherance if the scheme has already reached fruition at the time of the mailing."). So we are left with our original conclusion that this second alleged act of racketeering, at best, pleads nothing more than an act of conversion, which, as we previously noted, does not constitute a predicate act for purposes of RICO.

### 3. The Sur–Reply Brief

■ McDonald amended her complaint specifically to add this third allegation of mail fraud. McDonald contends that Schencker's act of petitioning for and obtaining leave to file a sur-reply brief in the Cook County appellate matter constituted yet another scheme to bilk her out of more money through the use of the U.S. mails, because it would again enable him to send her future bills at the "fraudulently excessive rate of $225 per hour." Granted, a sur-reply brief may be overkill and possibly a wasted effort since filing requires leave of the court. But Schencker was attempting to get in the last word. Therefore, McDonald's third allegation of mail fraud, besides bordering on the ridiculous, is nothing more than another attempt to complain about Schencker's hourly billable rate, which as we have observed above, does not constitute mail fraud.

Given this discussion, there is the possibility that McDonald could amend her complaint to somehow wrap a RICO claim around an expanded set of facts. *See, e.g., Ray v. Karris,* 780 F.2d 636, 645 (7th Cir.1985) (reversing because the plaintiffs—as well as the district court—in focusing their attention solely on whether there was a RICO pattern, apparently paid no attention to the insufficiency of the underlying acts of racketeering; however, based on notions of equity and the notice pleading theory underlying the federal rules, this court remanded to the district court so that plaintiffs could amend their complaint and reallege predicate acts with requisite specificity). But McDonald has already had ample opportunity to amend her complaint. Subsequent to filing her initial complaint, but before Schencker filed his motion to dismiss, McDonald amended her complaint to add her third "predicate act" involving the sur-reply brief. In her amendment, McDonald did not plead any additional facts and shore up her original allegations of mail fraud involving Schencker's appellate bill and his alleged conversion of the escrow funds.

Moreover, following the dismissal of her amended complaint, McDonald took no steps to reopen the district court's judgment under Rule 59(e) or 60 and replead her complaint through an amendment. *See Graue Mill,* 927 F.2d at 992 (7th Cir.1991); *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1111 (7th Cir.1984), *cert. denied,* 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985); *see also* 3 Moore's Federal Practice ¶ 15.10 at 15–107 to 15–108 (2d ed. 1993). In fact, one week after the district court's dismissal, McDonald, suspecting that the district court's dismissal had been with prejudice—but unsure since the court had not said so—filed a motion with the district court asking the court to clarify its order and specifically state that the amended complaint was "dismissed *with prejudice* and *without leave to amend.*" This decision to make the district court's dismissal final and take an appeal, as compared to reamending her complaint, demonstrates to us that McDonald's allegations of mail fraud against Schencker were as good as they were going to get. For that matter, based on McDonald's representations at oral argument, we do not think that any number of amendments could sufficiently plead facts that would allow a court to classify any of Schencker's actions as mail fraud. In this situation, no equitable interest would be served in remanding this complaint back to the district court for further pleading. Therefore, we conclude that McDonald, in

sticking with these insufficient allegations of mail fraud, has failed to clear the first hurdle in establishing a claim under RICO.

## B. Pattern of Racketeering

■ Even assuming Schencker's deeds could qualify as predicate acts, we agree with the district court that McDonald's complaint failed to sufficiently allege a pattern of racketeering. RICO itself defines a pattern as at least two acts of racketeering within ten years. 18 U.S.C. § 1961(5). But as noted by the Supreme Court in *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 237, 109 S.Ct. 2893, 2899, 106 L.Ed.2d 195 (1989), this "does not so much define a pattern of racketeering activity as state a minimum necessary condition for the existence of such a pattern." In other words, a pattern is not established simply by alleging two predicate acts of racketeering, but instead, by proving a relationship between the predicates (relation), coupled with the threat of continued criminal activity (continuity). *See id.* at 239, 109 S.Ct. at 2900.

■ The question before us is whether or not McDonald's complaint sufficiently alleged the element of continuity. "Continuity," according to *H.J.*, "is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241, 109 S.Ct. at 2901. A plaintiff may allege continuity over a closed period by proving "a series of related predicates extending over a *substantial period of time.*" *Id.* at 242, 109 S.Ct. at 2902 (emphasis added). Yet, in many instances the plaintiff cannot establish continuity in this manner, perhaps because the acts occurred only over a relatively short period of time. In this situation, known as an "open-ended" scheme, continuity may still be shown where the predicate acts, by their very nature, pose "a threat of repetition extending indefinitely into the future," or "are part of an ongoing entity's regular way of doing business." *Id.* at 242, 109 S.Ct. at 2902.

■ Admittedly, this distinction between closed-ended and open-ended is not clear-cut, *see H.J.*, 492 U.S. at 251–54, 109 S.Ct. at 2906–08 (Scalia, J., concurring in judgment), and this is no accident, for the Court in *H.J.* opted instead for continuity determinations to be made on the "specific facts of each case." *See id.* at 242, 109 S.Ct. at 2902. So to guide us in this fact-specific inquiry, this circuit after *H.J.* has at times resorted to the multifactor continuity test first outlined in *Morgan v. Bank of Waukegan*, 804 F.2d 970 (7th Cir.1986). *See, e.g., Midwest Grinding*, 976 F.2d at 1023 (using *Morgan* test to determine the existence of continuity in a closed-ended scheme because the test "survives *H.J.*"); *J.D. Marshall Intern. v. Redstart, Inc.*, 935 F.2d 815, 820 (7th Cir.1991) (utilizing the *Morgan* test in light of *H.J.*'s failure to provide a "clear-cut test of specific formula" for determining the existence of continuity); *Olive Can Co., Inc. v. Martin*, 906 F.2d 1147, 1151 n. 2 (7th Cir. 1990) (*Morgan*'s multifactor test confirmed by *H.J.* and thus still relevant). These factors include: (1) the number and variety of predicate acts and the length of time over which they were committed; (2) the number of victims; (3) the presence of separate schemes; and (4) the occurrence of distinct injuries. *See Morgan*, 804 F.2d at 975. In assessing these factors, however, it is important to note—and this is a point *H.J. did* make clear—that "Congress was concerned in RICO with long-term criminal conduct." *H.J.*, 492 U.S. at 242, 109 S.Ct. at 2902. In other words, "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct" cannot establish continuity, and, accordingly, a pattern of racketeering. *Id.*

■ With these principles in mind we turn to McDonald's complaint. Taking the allegations as true, McDonald's complaint alleges: (1) one general scheme—Schencker's attempt to bill McDonald for as much as he could for a routine appellate matter; (2) one victim—McDonald; (3) three acts—submitting an excessive bill, obtaining leave to file a sur-reply brief, and converting the escrow funds; and (4) a time period of, at most, two months—from the mailing of the bill until the conversion of the funds. The allegations also establish a definite ending point at the moment Schencker converted the escrow funds;

he could not do anything else because he had been fired when McDonald received his bill, so that takes care of the threat of repetition on his part. In short, these allegations at best constituted "the type of short-term, closed-ended fraud that, subsequent to *H.J.*, this circuit consistently has held does not constitute a pattern." *Uni\*Quality*, 974 F.2d at 922 (citing *J.D. Marshall*, 935 F.2d at 820-21; *U.S. Textiles, Inc. v. Anheuser–Busch Companies, Inc.*, 911 F.2d 1261, 1266–69 (7th Cir.1990); *Olive Can*, 906 F.2d at 1150–52).

McDonald raises two reasons why her complaint does in fact demonstrate continuity for purposes of a RICO pattern. First, McDonald cites to a series of this court's pre-*H.J.* decisions, specifically, *Ashland Oil Inc. v. Arnett*, 875 F.2d 1271 (7th Cir.1989), *United States v. Horak*, 833 F.2d 1235 (7th Cir. 1987), *Appley v. West*, 832 F.2d 1021 (7th Cir.1987), *Liquid Air Corp. v. Rogers*, 834 F.2d 1297 (7th Cir.1987), *cert. denied*, 492 U.S. 917, 109 S.Ct. 3241, 106 L.Ed.2d 588 (1989), and *Illinois Dept. of Revenue v. Phillips*, 771 F.2d 312 (7th Cir.1985), as support for her contention that a RICO pattern can exist, even within a compressed time frame such as here, where a plaintiff can demonstrate a single scheme involving a series of separate, wrongful acts, each of which puts a distinct sum of money into the defendant's pocket. *See, e.g., Ashland*, (single scheme consisting of a variety of acts over a four-month period); *Appley*, (single scheme, single victim, four-month period, two acts with each causing a distinct and separate injury); *Liquid Air*, (single scheme, over seven months, involving nineteen acts, each causing a distinct and separate injury); *Phillips*, (single scheme, single victim, over nine months, involving nine acts, each causing a distinct and separate injury). This is easily disposed of insofar as we have recently determined, in light of *H.J.*, that "the common thread in all these cases"—which led us to acknowledge the existence of continuity and hence a pattern—"is the existence of a genuine threat of continued criminal activity"—or, as *H.J.* put it, an open-ended scheme which possessed the threat of extending indefinitely into the future. *See J.D. Marshall*, 935 F.2d at 821; *see also Olive Can*, 906 F.2d at 1152 (*Ashland* involved an open-ended scheme which posed a threat of continued criminal activity). And as we have previously demonstrated, no such threat is to be found in McDonald's allegations, which prevents her from invoking these pre-*H.J.* cases as support for her contention that Schencker's activities demonstrated a pattern of racketeering.

McDonald's second argument is that she did indeed establish a threat of continuing criminal activity extending indefinitely into the future. She first points to paragraph 23 of her amended complaint, which alleges that, as a proximate consequence of his bad acts, Schencker set in motion a series of routine and foreseeable uses of the U.S. mails, including the ARDC's investigations and proceedings, as well as the filing of the present RICO action, all of which threaten to extend indefinitely into the future. This is absurd. Not only do these allegations fail to allege any threat of future activity on the part of *Schencker*, they are also patently circular, because, taken to its logical conclusion, under McDonald's definition of continuity, the very fact that a RICO plaintiff files a complaint (or any other routine mailings during the course of litigation) conclusively establishes a pattern of racketeering. As her only other reason why her complaint alleges the existence of continuity, McDonald contends that as long as Schencker represented her in the Illinois appellate matter, he would continue to charge a fraudulent and excessive fee for as long as this litigation continued, which could go on indefinitely. But every lawsuit has a foreseeable end in sight (Schencker's involvement in this one ended abruptly when McDonald fired him). Therefore it is inappropriate to say that this matter could extend *indefinitely* into the future, and we find nothing in McDonald's allegations to support her contentions to the contrary. As a result, McDonald's complaint fails under both the closed- and open-ended continuity analysis and cannot demonstrate a pattern for purposes of RICO.

## C. Appellate Attorneys' Fees

■ Schencker has requested that we sanction McDonald under Rule 38 of the Federal Rules of Appellate Procedure. In order to award sanctions under Rule 38 we must determine whether the appeal was frivolous. *See Hartz v. Friedman,* 919 F.2d 469, 475 (7th Cir.1990); *Mars Steel Corp. v. Continental Bank N.A.,* 880 F.2d 928, 938 (7th Cir.1989) (en banc). An appeal is frivolous "when the result is foreordained by the lack of substance to the appellant's arguments." *Hartz, id.* (citing *Mars Steel Corp.,* 880 F.2d at 938). On the surface at least, magnifying a dispute over attorneys' fees into a federal RICO case would appear frivolous. And even if we were to regard Schencker's acts as McDonald perceived them, she should have concluded before taking her appeal that this court, in light of its post-*H.J.* decisions, would not hold that two or three purported acts of racketeering over a two-month period constituted a pattern under RICO. And she surely should have anticipated that we would not consider her own future actions or those of the ARDC in evaluating the threat of future racketeering activity. This is a case where a reasonable attorney, staying current in the world of RICO, should have terminated what had obviously become a hopeless cause of action.

Nevertheless, appellate sanctions are within our discretion. *See Hartz,* 919 F.2d at 475. Sanctions are appropriate "if the appeal was prosecuted with no reasonable expectation of altering the district court's judgment and for purposes of delay or harassment or sheer obstinacy." *Mays,* 865 F.2d at 139; *Hartz,* 919 F.2d at 475. From our review of the hearing on Schencker's motion to dismiss, it appears that the district court, perhaps in an attempt to be charitable—or what is more likely, to avoid having to sanction McDonald pursuant to Schencker's pending Rule 11 motion[5]—made several statements that possibly encouraged McDonald to take this appeal. For instance, the district judge regarded the question of whether Schencker's actions posed a threat of continuing violations "as a particularly close question." The district judge further noted that McDonald "filed a complaint that a reasonable lawyer would have believed was within the guidelines of RICO," that her argument was "candid and fair," and that this was not "a typical or obvious or easy RICO case." In light of these observations by the district court, we are unable to say that in initiating this appeal, McDonald had "no reasonable expectation of altering the district court's judgment" in this court, or that she did so for the sole purposes delay, harassment, or sheer obstinacy. *Hartz,* 919 F.2d at 475. Nevertheless, future RICO litigants should not read this as an indication that a RICO claim such as McDonald's has any merit. To the contrary, once the heat of the district court proceedings had subsided, a reasonable attorney, keeping abreast of this circuit's decisions under RICO, should have concluded that this appeal involved nothing more than a garden-variety business dispute recast as mail fraud, and had no validity on appeal.

## III. Conclusion

McDonald's complaint failed to sufficiently allege any acts which would fall within the definition of "racketeering activity" as that term is defined under 18 U.S.C. § 1961(5). In the alternative, McDonald's complaint cannot establish the requisite continuity needed to support a conclusion that Schencker had engaged in a pattern of racketeering. Accordingly, the district court's dismissal is AFFIRMED. For the reasons stated above, Schencker's request for Rule 38 sanctions is DENIED.

---

5. Under the previous version of Rule 11 (to which McDonald's complaint was subject and which the district court was bound to apply), if the district court found that a litigant's claim was unsupported by existing law, and that a reasonable inquiry would have alerted the party to this fact, then the district court had no choice but to impose sanctions. *See* Fed.R.Civ.P. 11 ("If a pleading ... is signed in violation of this rule, the court ... *shall* impose ... an appropriate sanction....") (emphasis added).