VICOM, INC., Plaintiff–Appellant,

v.

HARBRIDGE MERCHANT SERVICES, INC., as Successor in Interest to Peach Tree Bancard Corporation, Judy Elliot, James Elliot, et al., Defendants–Appellees.

Nos. 93–1328, 93–1329.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 28, 1993.

Decided April 5, 1994.

Diane I. Jennings (argued), Lord, Bissell & Brook, Chicago, IL, George W. Hamman, Marvin Benn, Dawn M. Cassie, Richard J. Superfine, Hamman & Benn, Chicago, IL, Eric M. Alderman, Lawrence A. Zimmer-

man, Lisa DiPoala Haber, Devorsetz, Stinziano, Gilberti & Smith, Syracuse, NY, for plaintiff-appellant.

Kevin E. White, Thomas A. Reynolds, III, Winston & Strawn, Chicago, IL, Cynthia Photos Abbott, Raymond E. Stachnik (argued), Stewart T. Kusper, Katten, Muchin & Zavis, Chicago, IL, Thomas C. Buckel, Jr., Hancock & Estabrook, Syracuse, NY, Robert G. Peterson, Chicago, IL, for defendants-appellees.

Before CUDAHY, RIPPLE and MANION, Circuit Judges.

RIPPLE, Circuit Judge.

Vicom, Inc. ("Vicom") brought an action against the defendants under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68, and supplemental state law claims. The district court dismissed Vicom's nine-count amended complaint for failure to allege fraud with particularity and for failure to state a claim upon which relief can be granted. *See* Fed. R.Civ.P. 9(b) & 12(b)(6). Following dismissal, the district court denied Vicom's motion for leave to file a second amended complaint. Vicom now appeals. For the reasons that follow, we affirm the judgment of the district court.

## I

## BACKGROUND

### A. *Facts* [1]

At the time of the events at issue in this lawsuit, Vicom was the managing and general partner of American Network Leasing Partnership No. A–3, a partnership organized to purchase and lease electronic credit card processing equipment. Vicom's duties included purchasing the equipment and arranging, negotiating, and entering into leases with interested merchants. One of the defendants in this action, Consolidated Funding Corporation ("Consolidated"), provides lease brokerage services. In May 1988, it introduced Vicom to another defendant in this action, Peach Tree Bancard Corporation ("Peach Tree"). Peach Tree sold, installed, and maintained electronic credit card processing equipment. Peach Tree also served as a clearinghouse for electronic credit card transactions performed on the equipment. Consolidated introduced Vicom to Peach Tree with the aim of facilitating an agreement between those two parties under which Vicom would purchase electronic credit card processing equipment from Peach Tree and lease it to merchants, and Peach Tree would service the merchants with credit card transaction processing.

On July 15, 1988, following several months of negotiations, Vicom and Peach Tree entered into a vendor agreement which provided that Peach Tree would identify prospective lessees and forward any completed applications and initial payments to Vicom. If Vicom approved the application and executed the lease, Peach Tree would install the equipment. After the merchant accepted delivery of the equipment and Vicom confirmed the delivery, Vicom would pay Peach Tree the purchase price of the equipment. Vicom assumed the responsibility of collecting the lease charges, except when Peach Tree elected to guarantee a merchant's account under the "Vendor Recourse" provision. (Under the Vendor Recourse provision, Peach Tree could request Vicom to reconsider a lease application that it had rejected if Peach Tree agreed to guarantee the lessee's payments in the event the lessee defaulted.) At the end of a merchant's lease term, both Vicom and Peach Tree were to share in the residual value of the equipment.

The vendor agreement included a merger clause, providing that the written agreement composed the entire agreement between the parties. In addition, neither party could orally waive any provision in the agreement, and any modification had to be in writing. The vendor agreement also covered the form of the merchants' leases, stating that they were to be noncancelable, which the merchant leases stated in large boxed type. Further, the agreement required merchants

---

1. This rendition is based not only on the plaintiff's prolix and confusing complaint but also on the statement of facts in the plaintiff's brief.

to allow direct withdrawal from their bank accounts for any amounts they owed in conjunction with the lease. Finally, merchant-lessees had to agree to allow Peach Tree to install and maintain the equipment, as well as to provide for training and transaction processing, for which Peach Tree received a fee. Once formed, however, the relationship between Peach Tree and a merchant was terminable at will.

Between July 15, 1988 and April 9, 1989, Vicom entered into 2,252 leases with merchants Peach Tree had introduced to it. As a result, Vicom purchased from Peach Tree over $4.1 million of electronic credit card processing equipment. During this time period, however, Vicom alleges that Peach Tree and the other named defendants engaged in a course of deceitful dealing and fraudulent activity. Vicom alleges that Peach Tree sales representatives fraudulently informed certain merchants that the leases were cancelable, and that the merchants would own the equipment at the end of the lease. Vicom elsewhere alleges that Peach Tree led other merchants to believe that defendant Dallas Leasing Company ("DLC"), a Peach Tree affiliate, owned the equipment. Peach Tree thereby induced merchants to return the equipment to DLC upon termination of the lease, whereupon Peach Tree fraudulently converted the property.

Vicom further alleges that, because many of Peach Tree's referrals failed to meet Vicom's credit requirements, Peach Tree officials orally agreed to guarantee the leases of various noncreditworthy merchants in the event of a default pursuant to the Vendor Recourse provision of the vendor agreement. Vicom states that Peach Tree never paid Vicom for the defaulting merchants' accounts it guaranteed and, notwithstanding the fact that the vendor agreement required all modifications of the agreement to be in writing, alleges that it reasonably relied on these oral guarantees in entering into leases with merchants who eventually defaulted. In addition, Vicom's amended complaint alleges that Peach Tree failed to maintain properly the leased equipment and to process credit card sales on time. It also asserts that much of the leased equipment was incomplete or not functional. As a result, the amended complaint states, merchants stopped making lease payments to Vicom. In response to these problems, Vicom alleges that Peach Tree fraudulently assured Vicom that it was correcting the troubles. On April 9, 1989, Vicom terminated its relationship with Peach Tree, citing Peach Tree's deceptive activities as the reason. In April 1991, James Elliot, owner and president of Peach Tree and a defendant in this action, sold Peach Tree for $87 million to Peach Tree Acquisition Corporation, which subsequently changed Peach Tree's name to Harbridge Merchants Services, Inc.

### B. District Court Proceedings

On November 14, 1991, Vicom initiated this case by filing a complaint in the United States District Court for the Northern District of New York; it alleged various RICO and supplemental state law claims. In March 1992, following the defendants' January 1992 motion for dismissal, the case was transferred by stipulation of the parties to the Northern District of Illinois. Soon thereafter, Vicom filed a 119-page, 385-paragraph, nine-count amended complaint in which Vicom sought relief under RICO and supplemental state law theories. The amended complaint alleged five schemes upon which Vicom based various predicate acts of mail and wire fraud:

(1) a scheme to induce Vicom to enter into leases falling outside of Vicom's established credit parameters;

(2) a scheme to induce merchants to enter into leases upon terms materially different from those Vicom had previously approved as acceptable for its lease portfolio;

(3) a scheme to interfere with Vicom's lease arrangements;

(4) a scheme to commit larceny by conversion;

(5) an overall scheme to inflate Peach Tree's net worth.

Following transfer to the Northern District of Illinois, the defendants renewed their motions to dismiss.

On January 8, 1993, the district court dismissed the nine RICO causes of actions Vi-

com alleged in its amended complaint. Because federal jurisdiction was based solely on the RICO counts, the court also dismissed Vicom's supplemental state law claims and entered judgment for the defendants. The district court noted at the outset of its Memorandum Opinion and Order that it found it "tempting" to strike such a prolix complaint in its entirety under Federal Rule of Civil Procedure 8(a). Mem. Op. at 7. However, because Vicom had already amended the complaint once, the court expressed little hope that Vicom's third attempt would have resulted in anything substantially better. Instead, the court decided to dismiss the amended complaint under Rules 9(b) and 12(b)(6). The district court's Rule 12(b)(6) grounds for dismissing the various RICO counts ranged from duplicative pleading to failure to state a RICO investment-use injury under § 1962(a).

On January 26, 1993, the district court heard arguments on Vicom's motion for leave to file a second amended complaint, but Vicom's counsel failed to make an appearance. The court indicated that it was inclined to deny Vicom's motion, but to allow Vicom to refile the motion if Vicom attached its proposed second amended complaint to it. But before the district court made its decision, the defendants' counsel pointed out that Vicom had made its motion not under Rules 59(e) or 60(b), as required following a Rule 58 judgment, but rather under Rule 15(a). As a result, the court denied Vicom's motion for leave to file a second amended complaint as an inappropriate post-judgment motion.

## II

### ANALYSIS

■ Vicom presents two issues on appeal. First, Vicom submits that the district court erred in dismissing all the RICO counts alleged in Vicom's amended complaint. We shall review the district court's decision to dismiss Vicom's amended complaint de novo, *Schiffels v. Kemper Fin. Servs., Inc.,* 978

F.2d 344, 346 (7th Cir.1992), accepting as true all well-pleaded factual allegations, *Cornfield v. Consolidated High School Dist. No. 230,* 991 F.2d 1316, 1324 (7th Cir.1993). Second, Vicom argues that, even if the district court did not err in dismissing its amended complaint, the district court abused its discretion in not granting Vicom leave to file a second amended complaint. Vicom contends that the district court's action constituted an abuse of discretion because the court based its ruling on an erroneous view of the law.[2] We now address each of these issues.

### A. *Dismissal of Vicom's Amended Complaint*

#### 1.

■ The defendants invite us to affirm the district court's dismissal of Vicom's amended complaint under Rule 8(a) on the basis of the amended complaint's prolixity. The district court appears to have come close to taking this route. Because we too are dismayed by Vicom's 119–page, 385–paragraph less-than-coherent amended complaint, we shall address the defendants' argument.

Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." In addition, Rule 8(e)(1) states that "[e]ach averment of a pleading shall be simple, concise, and direct." The primary purpose of these provisions is rooted in fair notice: Under Rule 8, a complaint "'must be presented with intelligibility sufficient for a court or opposing party to understand whether a valid claim is alleged and if so what it is.'" *Wade v. Hopper,* 993 F.2d 1246, 1249 (7th Cir.) (citations omitted), *cert. denied,* —— U.S. ——, 114 S.Ct. 193, 126 L.Ed.2d 151 (1993); *see also Jennings v. Emry,* 910 F.2d 1434, 1436 (7th Cir.1990) (stating that a complaint "must be presented with clarity sufficient to avoid requiring a district court or opposing party to forever sift through its pages in search" of what it is the plaintiff asserts). A complaint that is

---

**2.** *See Bower v. Jones,* 978 F.2d 1004, 1008 (7th Cir.1992) (stating that we review a district court's decision not to allow amendment under abuse of discretion standard); *United States v. Koen,* 982 F.2d 1101, 1114 (7th Cir.1992) (stating that a district court's decision shall not be reversed under abuse of discretion standard if it is "in conformity with established legal principles").

prolix and/or confusing makes it difficult for the defendant to file a responsive pleading and makes it difficult for the trial court to conduct orderly litigation. *See 2A Moore's Federal Practice* § 8.13, at 8–58 (noting that Rule 8 compliance allows a defendant to answer the complaint, and that Rule 8 prevents problems with conducting pretrial discovery, formulating pretrial orders, and applying res judicata); *see also Michaelis v. Nebraska State Bar Assoc.*, 717 F.2d 437, 439 (8th Cir.1983) (affirming dismissal with prejudice of needlessly prolix and confusing complaint because "the style and prolixity of these pleadings would have made an orderly trial impossible"). Thus, courts should not allow plaintiffs to "plead[ ] by means of obfuscation." *Jennings,* 910 F.2d at 1436.

Because it is difficult to file a pleading in response to a prolix and confusing complaint, doing so also can be costly. The Ninth Circuit discussed the expenditure of a defendant's resources, as well as the costs to non-party litigants, when it affirmed the district court's dismissal with prejudice of a plaintiff's verbose and confusing amended complaint:

> The appellees herein have had to spend a large amount of time and money defending against Cissna's poorly drafted proceedings in this and related actions. The right of these defendants to be free from this costly and harassing litigation and the rights of litigants awaiting their turns to have other matters resolved must be considered and the judgment of dismissal with prejudice affirmed.

*Nevijel v. North Coast Life Ins. Co.,* 651 F.2d 671, 675 (9th Cir.1981) (citation omitted).[3]

Many plaintiffs attempt to excuse lengthy and confusing complaints by pointing to the type of claim or theory under which they are pleading. RICO plaintiffs, for instance, often state that the complexity of the RICO statute somehow exempts RICO complaints from the strictures of Rule 8. Vicom stated as much at oral argument in this case. However, the caselaw is clear that, although RICO complaints often might need to be somewhat

longer than many complaints, RICO complaints must meet the requirements of Rule 8(a)(2) and Rule 8(e)(1). *See, e.g., Hartz v. Friedman,* 919 F.2d 469, 471 (7th Cir.1990) (stating that trial court could have dismissed 125–page RICO complaint pursuant to Rule 8(a)(1)); *Jennings,* 910 F.2d at 1434 (stating that the fact that RICO is being pled does not make Rule 8(e)(1) any less applicable). Moreover, the particularity demands of pleading fraud under Rule 9(b) in no way negate the commands of Rule 8. *See, e.g., Thornton v. Evans,* 692 F.2d 1064, 1082 n. 41 (7th Cir.1982) (stating that "detailed allegations required by Rule 9(b) must 'be [made] consistently with the general philosophy of Rule 8(e)(1)' ") (quoting 5 Wright & Miller, *Federal Practice and Procedure* § 1281, at 364 (1969)); *see also Moore's Federal Practice* § 8.13, at 8–57, 8–58.

Vicom's confusing, redundant, and seemingly interminable amended complaint violated the letter and the spirit of Rule 8(a). However, the district court decided not to dismiss it under Rule 8(a) because the court did not believe that dismissal with leave to replead would have resulted in a vastly improved second amended complaint. The district court's reluctance to give Vicom a third chance is understandable. But given the fact that Vicom had already amended its complaint once, we think the district court should have given more serious consideration to dismissing Vicom's amended complaint with prejudice. Nonetheless, despite Vicom's "egregious violation of Rule 8(a)," we shall "treat the complaint on its merits because the district court chose to do so." *Hartz,* 919 F.2d at 471; *see also Wade v. Hopper,* 993 F.2d 1246, 1249 (7th Cir.1993) (same); *Jennings,* 910 F.2d at 1436 (same).

**2.**

■ The district court dismissed one of the RICO counts in Vicom's amended complaint for failing to plead fraud with particularity as required by Rule 9(b). Further, although the district court dismissed the rest of the counts alleged in the amended com-

---

**3.** *See also Gordon v. Green,* 602 F.2d 743, 745 (5th Cir.1979) (discussing the need to conserve

judicial resources through Rule 8 compliance).

plaint on other grounds, it held in the alternative that another of Vicom's counts failed to meet the requirements of Rule 9(b). Moreover, the defendants direct our attention to all the counts Vicom alleges in its amended complaint; they essentially submit that the entire amended complaint was devoid of the specifics Rule 9(b) demands.

Rule 9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The rule is said to serve three main purposes: (1) protecting a defendant's reputation from harm; (2) minimizing "strike suits" and "fishing expeditions"; and (3) providing notice of the claim to the adverse party. *See Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 924 (7th Cir.1992); *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987). Although some have questioned Rule 9(b)'s effectiveness in serving these purposes,[4] the caselaw and commentary agree that the reference to "circumstances" in the rule requires "the plaintiff to state 'the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'" *Uni\*quality*, 974 F.2d at 923 (quoting *Bankers Trust Co. v. Old World Republic Ins. Co.*, 959 F.2d 677, 683 (7th Cir.1992)); *see also Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir.1992) (stating that in a RICO action "the complaint must, at a minimum, describe the predicate acts with some specificity and 'state the time, place, and content of the alleged communications perpetrating the fraud'") (quoting *Graue Mill Dev. Corp. v. Colonial Bank & Trust Co.*, 927 F.2d 988, 992 (7th Cir.1991)); *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir.) (stating that Rule 9(b) "particularity" means "the who, what, when, where, and how: the first paragraph of any newspaper story"), *cert. denied*, 498 U.S. 941, 111 S.Ct. 347, 112 L.Ed.2d 312 (1990); 5 Wright & Miller, *supra*, § 1297, at 590.

The district court concluded that two RICO counts in Vicom's amended complaint failed to satisfy any of these particularized pleading requirements. The district court focused specifically on Vicom's failure to allege the specific identity of the individuals who made the alleged misrepresentations. Many of the allegations simply state that the misrepresentations were made "at the direction, under the supervision, or with the knowledge and consent" of all the defendants. Such pleading would appear to fall short of the standards set forth in the caselaw. Because fair notice is "[p]erhaps the most basic consideration" underlying Rule

---

4. First, some commentators argue that "Rule 9(b) does not adequately protect reputations and should not be intended to do so in any event." Jeff Sovern, *Reconsidering Federal Civil Rule 9(b): Do We Need Particularized Pleading Requirements in Fraud Cases?*, 104 F.R.D. 143, 164 (1985). They contend, for example, that "the logic behind dismissing fraud claims under [R]ule 9(b) because of prospective harm to reputation depends on an assumption that might be ill-founded: that the defendant will be vindicated in the public eye if the fraud allegations are later dismissed, dropped, or litigated to a judgment in the defendant's favor." Note, *Pleading Securities Fraud Claims With Particularity Under Rule 9(b)*, 97 Harv.L.Rev. 1432, 1447 (1984). Second, the critics of Rule 9(b) have expressed doubt about how effectively the rule deters and hinders strike suits and other harassment-based litigation because Rule 9(b) infirmities do not usually result in dismissal with prejudice. *See* Sovern, *supra*, at 176; Note, *supra*, at 1442. *But see* Sovern, *supra*, at 176–77 (agreeing with the courts that Rule 9(b) can be at least "helpful" in fighting strike suits). Finally, with respect to providing fair notice, the same commentators do not believe it "demonstrable that the notice rationale provides any greater justification for particularized pleading requirements in fraud cases than it does in any other case." *Id.* at 179; *see also* Note, *supra*, at 1444–45. They also note that the "decision that fraud pleadings ought to be specific for the purpose of providing notice apparently represents a determination that notice ought to be provided in the pleading itself rather than in the discovery process." Sovern, *supra*, at 178. Although some argue that this aspect of Rule 9(b) is not in keeping with the spirit of the Federal Rules, *see generally* Richard L. Marcus, *The Revival of Fact Pleading Under the Federal Rules of Civil Procedure*, 86 Colum.L.Rev. 433 (1986); Wright & Miller, *supra*, § 1296, at 577, the courts have nonetheless shown that they will "construe Rule 9(b) strictly in order to ... give defendants notice" of the claims asserted, *Billard v. Rockwell Int'l Corp.*, 683 F.2d 51, 57 (2d Cir. 1982); *see also* Marcus, *supra*, at 435 (stating that "federal courts are insisting on detailed factual allegations more and more often"); Wright & Miller, *supra*, § 1297, at 613 ("In recent years some courts have shown a tendency to be more demanding in their application of Rule 9(b).").

9(b), Wright & Miller, *supra*, § 1298, at 648, the plaintiff who pleads fraud must "reasonably notify the defendants of their purported role in the scheme." *Midwest Grinding*, 976 F.2d at 1020. Therefore, in a case involving multiple defendants, such as the one before us, "the complaint should inform each defendant of the nature of his alleged participation in the fraud." *DiVittorio*, 822 F.2d at 1247; *see also Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir.1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'"); *Balabanos v. North Am. Inv. Group, Ltd.*, 708 F.Supp. 1488, 1493 (N.D.Ill.1988) (stating that in cases involving multiple defendants "the complaint should inform each defendant of the specific fraudulent acts that constitute the basis of the action against the particular defendant"). We previously have rejected complaints that have "lumped together" multiple defendants. For instance, in *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir.1990), we affirmed the district court's dismissal of the plaintiff's complaint with prejudice because the complaint was "bereft of any detail concerning who was involved in each allegedly fraudulent activity." Instead, "the complaint lump[ed] all the defendants together and [did] not specify who was involved in what activity." *Id.; see also Design, Inc. v. Synthetic Diamond Technology, Inc.*, 674 F.Supp. 1564, 1569 (N.D.Ill.1987) (discussing the prohibition on lumping defendants together).[5]

An examination of the amended complaint brings us to the conclusion that, at many points, Vicom's complaint lacks the requisite specificity. Vicom has often failed to identify with particularity the actors who participated in the various schemes it alleges. Moreover, Vicom seems not to have done so because of lack of knowledge, but rather out of poor

pleading. For example, in Count 1, Vicom alleges that a Peach Tree sales representative misrepresented to a merchant that its lease for the electronic credit card processing equipment was cancelable. The amended complaint states neither who made the misrepresentation nor on what date it was made. Amended Complaint at ¶ 235. However, in Exhibit G of the amended complaint, Vicom has included the letter in which the misrepresentation was made, and that letter contains both the name of the Peach Tree sales representative and the date of the misrepresentation.

We certainly can see why the district court concluded that, at least with respect to some allegations, Vicom had not met Rule 9(b) standards. Nonetheless, instead of parsing the 119–page, 385–paragraph, we think it more expeditious to decide the main substantive issue presented by this appeal: whether Vicom has pleaded successfully the RICO violations at the heart of the amended complaint. *See In re Scarlata*, 979 F.2d 521, 525 n. 5 (7th Cir.1992) (stating that we may affirm dismissal of a complaint on any grounds consistent with the facts alleged).

### 3.

Vicom's amended complaint alleges counts of RICO violations based on 18 U.S.C. § 1962(c) and § 1962(a). A RICO plaintiff alleging a violation of § 1962(c) must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985) (footnote omitted). A § 1962(a) violation, on the other hand, requires "the receipt of income from a pattern of racketeering activity, and the use of that income in the operation of an enterprise." *Morgan v. Bank of Waukegan*, 804 F.2d 970, 972–73.[6] Although the

---

5. Exceptions to individualizing defendants' roles do exist—e.g., when a plaintiff is alleging fraud against a third party and thus may lack the requisite Rule 9(b) information, *see Uni*Quality*, 974 F.2d at 923, or when such information is uniquely within the defendant's knowledge, *Midwest Grinding*, 976 F.2d at 1020.

6. Because § 1962(a) prohibits any person who has received income from a pattern of racketeering activity from "us[ing] or invest[ing], directly

or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise," the issue of standing arises when a RICO plaintiff alleges that the subsection has been violated. Although our circuit has not addressed the issue to date, the majority of circuits hold that the use or investment of the racketeering income must proximately cause the plaintiff's injury; injury caused by the predicate racketeering acts is inadequate. *See Nugget Hy-*

subsections vary in some of their requirements, a "pattern of racketeering activity" must exist to find a violation of either subsection. A pattern of racketeering activity consists of at least two predicate acts of racketeering committed within a ten-year period. 18 U.S.C. § 1961(5). Because the RICO statute has nothing more to say ·about its pattern requirement, the Supreme Court has attempted to sharpen the contours of the pattern requirement in order to effectuate the congressional intent with respect to the statute's use. The Court has stated that, because Congress enacted RICO not out of concern for a sporadic fraudulent act but out of concern for long-term conduct, "a plaintiff ... must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989); *see also Sedima*, 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14. The relationship part of this "continuity plus relationship" test requires that the predicate acts be "committed somewhat closely in time to one another, involve the same victim, or involve the same type of misconduct." *Morgan*, 804 F.2d at 975. However, as with the vast majority of cases dealing with the RICO pattern requirement, the case before us does not turn on the relatedness of the alleged

predicate acts. Instead, we must focus on whether the pattern of racketeering Vicom alleges satisfies the continuity prong of that test.

In *H.J., Inc.*, the Supreme Court stated that continuity "is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." 492 U.S. at 241, 109 S.Ct. at 2901. Yet regardless of which type of continuity is at issue, continuity is "centrally a temporal concept." *Id.* at 242, 109 S.Ct. at 2902. Because allegations of conduct that can be characterized as either closed- or open-ended suffice to satisfy the continuity prong of the pattern requirement, we shall examine whether the conduct alleged in Vicom's amended complaint meets either standard.

a.

■ In order to demonstrate a pattern over a closed period, a RICO plaintiff must "prov[e] a series of related predicates extending over a substantial period of time." *Id.* In *H.J., Inc.*, the Supreme Court emphasized this durational aspect of closed-ended continuity: "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this

droelectric, L.P. v. Pacific Gas & Elec. Co., 981 F.2d 429, 437 (9th Cir.1992) (concluding that "a plaintiff seeking civil damages for a violation of section 1962(a) must allege facts tending to show that he or she was injured by the use or investment of racketeering income"), *cert. denied*, — U.S. —, 113 S.Ct. 2336, 124 L.Ed.2d 247 (1993); *Ouaknine v. MacFarlane,* 897 F.2d 75, 82 (2d Cir.1990) (same); *Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 494 (6th Cir.1990) (same); *Rose v. Bartle*, 871 F.2d 331, 356–58 (3d Cir.1989) (same); *Grider v. Texas Oil & Gas Corp.*, 868 F.2d 1147, 1149 (10th Cir.) (same), *cert. denied*, 493 U.S. 820, 110 S.Ct. 76, 107 L.Ed.2d 43 (1989). *But see Busby v. Crown Supply, Inc.*, 896 F.2d 833, 838 (4th Cir.1990) (stating that no investment-use injury need be alleged); *Mid–State Fertilizer v. Exchange Nat'l Bank*, 693 F.Supp. 666, 670–73 (N.D.Ill.1988) (same), *aff'd on other grounds*, 877 F.2d 1333 (7th Cir. 1989). Moreover, the majority view is that the mere reinvestment of the racketeering proceeds into a business activity is not sufficient for § 1962(a) standing. *See, e.g., Brittingham v. Mobil Corp.*, 943 F.2d 297, 305 (3d Cir.1991) ("If [rein-

vestment] were to suffice, the use-or-investment injury requirement would be almost completely eviscerated when the alleged pattern of racketeering is committed on behalf of a corporation.... Over the long term, corporations generally reinvest their profits, regardless of source."). Vicom lacks § 1962(a) standing under the majority rule because it has alleged injury only from the alleged predicate acts, not from the investment-use of the converted funds. However, because we conclude that Vicom has failed to demonstrate the existence of a "pattern" of racketeering activity, we need not state definitively our view on the majority's requirement that an allegation of investment-use is necessary to assert standing under § ·1962(a). *Cf. Mid–State*, 877 F.2d at 1340 n. 1 (Ripple, J., concurring) (pointing out that affirming the district court "ought not be read as our deciding *sub silentio* the important question of whether Mid–State has standing to bring an action under subsection (a) of section 1962"); *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir.1990) (declining on the facts presented to decide § 1962(a) standing issue for the circuit), *cert. denied*, — U.S. —, 112 S.Ct. 332, 116 L.Ed.2d 272 (1991).

requirement: Congress was concerned in RICO with long-term conduct." *Id.* In order to analyze the continuity prong of the pattern requirement, our post–*H.J., Inc.* caselaw has continued to find helpful the factors we set out in *Morgan v. Bank of Waukegan,* 804 F.2d 970, 975 (7th Cir.1986).[7] These factors "include the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries." *Id.* at 975. We are to apply these factors with an eye toward achieving a "'natural and commonsense'" result, recognizing that "'Congress was concerned in RICO with long-term criminal conduct.'" *United States Textiles,* 911 F.2d at 1267 (quoting *H.J., Inc.,* 492 U.S. at 237, 109 S.Ct. at 2899).

With this background in mind, we examine Vicom's RICO allegations with respect to duration—the length of time over which the alleged predicate acts were committed. Duration "is perhaps the closest thing we have to a brightline continuity test." *Midwest Grinding Co. v. Spitz,* 976 F.2d 1016, 1024 (7th Cir.1992). In several recent cases, this court has placed great importance on the length of time the alleged predicate acts have spanned. In *Midwest Grinding,* for instance, the court found it significant that the predicate acts behind the closed-ended period of racketeering activity went on for only nine months. *Id.* Similarly, in *Uni\*Quality, Inc. v. Infotronx, Inc.,* 974 F.2d 918, 922 (7th Cir.1992), the court concluded that "one scheme that lasted at most seven to eight months" was "precisely the type of short-term, closed-ended fraud that, subsequent to *H.J., Inc.,* this circuit consistently has held does not constitute a pattern." *See also*

*Olive Can,* 906 F.2d at 1151 (calling six months in the same context a "short period of time").

In both its amended complaint and its opening brief, Vicom concedes that the predicate acts behind the alleged schemes took place over a time span of less than nine months (i.e., July 1988 to April 1989). We have not ventured as far as the Third Circuit in holding that predicate acts spanning less than one year do not as a matter of law constitute a "substantial period of time" as required by *H.J., Inc.,* 492 U.S. at 242, 109 S.Ct. at 2902. *See Hughes v. Consol–Pennsylvania Coal Co.,* 945 F.2d 594, 611 (3d Cir.1991) ("We hold that twelve months is not a substantial period of time."), *cert. denied,* —— U.S. ——, 112 S.Ct. 2300, 119 L.Ed.2d 224 (1992); *see also Primary Care Inv. v. PHP Healthcare Corp.,* 986 F.2d 1208, 1215 (8th Cir.1993) (stating that "the activity lasted between ten and eleven months and . . . we deem this period insubstantial"). Nonetheless, Vicom's amended complaint nonetheless suffers from serious durational problems. The cases in our circuit, set out above, such as *Midwest Grinding,* 976 F.2d at 1024, demonstrate that a time frame of less than nine months likely does not satisfy the duration requirement. In fact, none of our cases has held that such a short time frame satisfies the durational aspect of closed-ended continuity.[8] Indeed, many of our cases have held that time frames longer than the one Vicom alleges do not constitute a "substantial period of time." *See, e.g., J.D. Marshall Int'l v. Redstart, Inc.,* 935 F.2d 815, 821 (7th Cir.1991) (thirteen months); *see also Midwest Grinding,* 976 F.2d at 1024 (cataloging Seventh Circuit cases and time

---

**7.** *See, e.g., Olive Can Co. v. Martin,* 906 F.2d 1147, 1151 n. 2 (7th Cir.1990) (stating that "our multifactored test was, in large part, confirmed by [*H.J., Inc.*] and is still relevant"); *see also Wade v. Hopper,* 993 F.2d 1246, 1251 (7th Cir.) (employing *Morgan* factors in a post-*H.J., Inc.* case), *cert. denied,* —— U.S. ——, 114 S.Ct. 193, 126 L.Ed.2d 151 (1993); *United States Textiles v. Anheuser–Busch Co.,* 911 F.2d 1261, 1267 (7th Cir.1990) (same); *Management Computer Serv., Inc. v. Hawkins, Ash, Baptie & Co.,* 883 F.2d 48, 51 (7th Cir.1989) (same). *But see Fleet Credit Corp. v. Sion,* 893 F.2d 441, 445–47 (1st Cir. 1990) (finding *Morgan* factors no longer viable

after *H.J., Inc.* directed courts to focus on duration).

**8.** Although we have found continuity to exist in cases in which the predicate acts have spanned very little time, the continuity alleged in those cases was open-ended continuity, which is discussed below. *See, e.g., Ashland Oil, Inc. v. Arnett,* 875 F.2d 1271 (7th Cir.1989) (concluding that open-ended continuity existed when predicate acts took place over only a four month period).

frames).[9]   Under our caselaw, then, Vicom's amended complaint cannot meet the durational aspect of closed-ended continuity.

Although duration is the single most important aspect of the closed-ended continuity analysis, we still must examine Vicom's amended complaint under the rest of the *Morgan* factors.   We therefore consider the number and variety of the predicate acts. *See Morgan*, 804 F.2d at 975.   Although Vicom's prolixity makes it seem as though Vicom alleges innumerable predicate acts to support its causes of action, a careful reading of the amended complaint reveals otherwise. When all the verbiage is weeded out, Vicom manages to allege a very few acts of mail or wire fraud in each count.   Just as important, Vicom's amended complaint does not allege a "variety of predicate acts" as that phrase is understood in the caselaw.   Instead, the only predicate acts that Vicom offers to support its § 1962(c) claims throughout its complaint are acts of mail and wire fraud.   "The Seventh Circuit, however, does not look favorably on relying on many instances of mail and wire fraud to form a pattern." *Hartz v. Friedman*, 919 F.2d 469, 473 (7th Cir.1990). This position has been reiterated in various cases, usually by means of an oft-quoted remark in *Lipin Enterprises, Inc. v. Lee*, 803 F.2d 322 (7th Cir.1986):

> Mail fraud and wire fraud are perhaps unique among the various sorts of 'racketeering activity' possible under RICO in that the existence of a multiplicity of predicate acts ... may be no indication of the requisite continuity of the underlying fraudulent activity.   Thus, a multiplicity of mailings does not necessarily translate directly into a 'pattern' of racketeering activity.

*Id.* at 325 (Cudahy, J., concurring); *see also Hartz*, 919 F.2d at 473 (quoting *Lipin* remark); *United States Textiles*, 911 F.2d at 1268 (same); *Sutherland v. O'Malley*, 882 F.2d 1196, 1205 n. 8 (7th Cir.1989) (same); *Ashland Oil, Inc. v. Arnett*, 875 F.2d 1271, 1278 (7th Cir.1989) (stating that the "number of [mail and wire fraud] offenses is only tangentially related to the underlying fraud, and can be a matter of happenstance").

The next *Morgan* factor, the number of victims involved, *see Morgan*, 804 F.2d at 975, is more difficult.   Although the defendants submit that Vicom was the sole alleged victim, it appears that Vicom has alleged the merchants to be victims as well.   It is true that the schemes themselves were not directed at the merchants;   nevertheless, the predicate acts in which Vicom alleges the defendants have engaged to further the alleged schemes would have victimized the merchants.   However, this consideration, standing alone, is in no way dispositive of whether the predicate acts alleged in the amended complaint can support a finding that continuity exists.   For instance, in *Olive Can*, 906 F.2d at 1151, there were "a large number of predicate acts" and "a number of victims," but the court still found that the short time frame and the lack of variety in the predicate acts militated against finding continuity. The *Morgan* court itself stated that the "doctrinal requirement of a pattern of racketeering activity is a standard, not a rule"—"with no one factor being necessarily dispositive." *Morgan*, 804 F.2d at 976.

Another factor we look to under *Morgan* is the number of schemes involved. *See Morgan*, 804 F.2d at 975.   Despite its attempts to allege otherwise, Vicom essentially alleges that Peach Tree had one scheme—to sell as much equipment as possible in order to increase the net worth of the company.   Vicom's complaint alleges five schemes, but does so in the same manner that it alleges predicate acts.   A careful, but charitable, reading of the complaint reveals that the other schemes (e.g., inducing merchants to

---

9.   Other circuits have examined closed-ended periods of more-or-less similar duration, and these periods "have been held not to be substantial even when they extend up to more than one year in duration."   Gregory P. Joseph, *Civil RICO: A Definitive Guide* 88 (1992) (citing *Feinstein v. RTC*, 942 F.2d 34 (1st Cir.1991) (two years); *Kehr v. Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406 (3d Cir.1991) (eight months), *cert. denied*, 501 U.S. 1222, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991); *Parcoil Corp. v. Nowsco Well Serv., Ltd.*, 887 F.2d 502 (4th Cir.1989) (four months); *Menasco, Inc. v. Wasserman*, 886 F.2d 681 (4th Cir.1989) (one year); *Newport, Ltd. v. Sears, Roebuck & Co.*, 941 F.2d 302 (5th Cir.1991) (ten months), *cert. denied*, —— U.S. ——, 112 S.Ct. 1175, 117 L.Ed.2d 420 (1992)).

enter into fraudulent leases, inducing Vicom to enter into fraudulent leases) all revolve around Vicom's allegation that Peach Tree intended to increase its net worth by any means necessary. The Supreme Court has held that courts can no longer conclude that the pattern requirement has not been satisfied solely on the basis that the plaintiff alleged only one scheme. *H.J., Inc.*, 492 U.S. at 235, 109 S.Ct. at 2898. Nonetheless, as our continued use of the *Morgan* factors makes clear, the number of schemes is still relevant as to whether continuity exists.

Finally, the last *Morgan* factor which we consider in determining whether closed-ended continuity exists is "the occurrence of distinct injuries." *Morgan*, 804 F.2d at 975. From Vicom's perspective, a distinct injury was inflicted through every individual predicate act. On previous occasions, however, we have rejected such an approach. For instance, in *United States Textiles*, 911 F.2d at 1269, we did not find that the defendant "suffered [a distinct] economic injury each time [the plaintiff] ordered and it shipped . . . under the [contract] terms." Instead, we stated that "a natural and common sense approach to the pattern element of RICO would instruct that identical economic injuries suffered over the course of two years stemming from a single contract were not the type of injuries which Congress intended to compensate via the civil provisions of RICO." *Id.* Such is the case with Vicom's allegations of economic injury. They stem from the same original contract and similar predicate acts. Thus, Vicom's alleged injuries—losses on cancelable or potentially cancelable leases—are not distinct.

In short, we conclude that Vicom has not alleged closed-ended continuity in its amended complaint. Many circuits would not have gone any further than determining that the predicate acts spanned only nine months, thereby failing to constitute a "substantial period of time" under *H.J., Inc.*, 492 U.S. at 242, 109 S.Ct. at 2898. *See, e.g., Fleet Credit Corp. v. Sion*, 893 F.2d 441, 445–47 (1st Cir.1990) (finding *Morgan* factors no longer viable after *H.J., Inc.* directed courts to focus on duration); *Hughes v. Consol–Pennsylvania Coal Co.*, 945 F.2d 594, 611 (3d Cir.1991)

("We hold that twelve months is not a substantial period of time."), *cert. denied*, —— U.S. ——, 112 S.Ct. 2300, 119 L.Ed.2d 224 (1992). Nonetheless, even under our more extensive *Morgan* analysis, Vicom has failed to allege sufficiently closed-ended continuity so as to satisfy the continuity prong of the pattern requirement.

b.

■■■ Because the predicate acts alleged in Vicom's amended complaint cannot support a finding of closed-ended continuity, we now examine whether Vicom can fulfill the continuity prong by establishing open-ended continuity. Continuity as an open-ended concept refers "to past conduct that by its nature projects into the future with a threat of repetition." *H.J., Inc.*, 492 U.S. at 241, 109 S.Ct. at 2901. When "a RICO action [is] brought before [closed-ended] continuity can be established," "liability depends on whether the *threat* of continuity is demonstrated." *Id.* at 242, 109 S.Ct. at 2902. Thus, although a RICO plaintiff must show duration to allege closed-ended continuity, open-ended continuity may satisfy the continuity prong of the pattern requirement regardless of its brevity. *See id.; Midwest Grinding*, 976 F.2d at 1023 ("An open-ended period of racketeering . . . is a course of criminal activity which lacks the duration and repetition to establish continuity."). Open-ended continuity is present when (1) "a specific threat of repetition" exists, (2) "the predicates are a regular way of conducting [an] ongoing legitimate business," or (3) "the predicates can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes." *H.J., Inc.*, 492 U.S. at 242–43, 109 S.Ct. at 2902; *see also Midwest Grinding*, 976 F.2d at 1023. We now examine each of these ways of showing open-ended continuity.

In assessing whether a threat of continued racketeering activity exists, we have made clear that schemes which have a clear and terminable goal have a natural ending point. Such schemes therefore cannot support a finding of any specific threat of continuity that would constitute open-ended continuity.

For instance, we based our decision in *Olive Can*, 906 F.2d at 1151,

> primarily on the undisputed evidence that the purpose of the allegedly fraudulent scheme was to pay [the defendant's] loan. The scheme, therefore, had a natural ending with no threat of continued criminal activity. This single scheme was to be short-lived and there is no evidence that, had the scheme worked, it would have been repeated in the future.

We thus concluded that no " 'specific threat of repetition' " existed. *Id.* (quoting *H.J., Inc.*, 492 U.S. at 242, 109 S.Ct. at 2902). Similarly, in *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918 (7th Cir.1992), the plaintiff brought a RICO action based on the defendant's alleged scheme to defraud the plaintiff by not paying for services for which it had promised to pay. On appeal from a motion to dismiss, we concluded that the plaintiff failed to allege any threat of repetition because the "scheme had a natural end point: the completion of the labor scheduling program[.]" *Id.* at 922; *see also Midwest Grinding*, 976 F.2d at 1023 (concluding that no specific threat of repetition existed because of ending point). Thus, the caselaw demonstrates that "acts that focus on a clearly defined, discrete, and finite goal often import no inherent threat of continuing misconduct." Gregory P. Joseph, *Civil RICO: A Definitive Guide* 89 (1992) (citing *Phelps v. Wichita Eagle–Beacon*, 886 F.2d 1262, 1272–73 (10th Cir.1989) (stating that the plaintiff failed to show open-ended continuity because he had merely "alleged a scheme to accomplish 'one discrete goal,' which he alleges was accomplished") (citations omitted)).

Because Vicom alleges a scheme that had a natural ending point, it too has failed to show a specific threat of continued racketeering activity. Vicom alleges throughout its amended complaint that Peach Tree had attempted to sell as much equipment as possible in order to inflate its value in the eyes of a prospective purchaser. For instance, Vicom states that the defendants' "collective goal was to sell as much Equipment to plaintiff as possible in a short period of time with the intent to sell Peach Tree." Amended

Complaint at ¶ 83.[10] In alleging such a scheme, Vicom basically concedes that there existed no specific threat of continued racketeering activity. There was, as the cases above point out, a "natural end point" that precluded such a threat. *See Uni\*Quality*, 974 F.2d at 922. Finally, Vicom's cursory and unparticularized allegations that defendant James Elliot continues to engage in racketeering activity through a new company does not alter our conclusion. A threat of continuity cannot be found from bald assertions such as "James Elliot continues his racketeering activities." Amended Complaint at ¶ 227.

If no specific threat of continuity exists, however, a RICO plaintiff can also allege open-ended continuity by showing that "the predicate acts are a regular way of conducting [the] defendant's ongoing legitimate business." *H.J., Inc.*, 492 U.S. at 243, 109 S.Ct. at 2902. Although the caselaw is somewhat sparse on this method of showing open-ended continuity, Vicom has little ground on which to make an argument under this method. *H.J., Inc.* stated that the "predicate acts" had to be part of the RICO defendant's regular way of conducting an ongoing business. *Id.* at 242–43, 109 S.Ct. at 2902–03. The Court did not say that demonstrating continuity in this fashion could be based on mere common law fraud. In *Fleet Credit Corp. v. Sion*, 893 F.2d 441 (1st Cir.1990), the First Circuit recognized this distinction:

> A threat of continued criminal activity for purposes of RICO is not established merely by demonstrating that the [defendant's] acts of common law fraud were a regular way of conducting their ongoing businesses. Rather, [the plaintiff] must demonstrate that the *predicate acts*—here the acts of mail fraud—were a regular way of conducting the ongoing businesses.

*Id.* at 448; *see also Johnston v. Wilbourn*, 760 F.Supp. 578, 588 n. 13 (S.D.Miss.1991) ("The law is clear that proof of a threat of continued criminal activity based on the regular way a business is conducted requires proof that the predicate acts themselves were a regular way of conducting the ongoing

---

10. Peach Tree was in fact sold in April 1991.

business."). In this case, Vicom has not even attempted to allege that the predicate acts of mail and wire fraud supporting its § 1962(a) and § 1962(c) claims, the only predicate acts on which Vicom's RICO claims are based, were part of Peach Tree's regular way of conducting its business.

Because the third way to show open-ended continuity concerns "long-term association[s] that exist[ ] for criminal purposes," *H.J., Inc.,* 492 U.S. at 243, 109 S.Ct. at 2902, it is not applicable to this case. Thus, Vicom has failed to allege either closed- or open-ended continuity and, as a result, has failed to show "that the predicates themselves amount to, or that they otherwise constitute a threat of, continuing racketeering activity." *Id.* at 240, 109 S.Ct. at 2901. Because Vicom has failed to make a showing of continuity, it has not sufficiently alleged a pattern of racketeering activity. The RICO counts in Vicom's amended complaint were therefore properly dismissed for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).[11]

## B. *Denial of Motion for Leave to File a Second Amended Complaint*

■ Vicom argues in the alternative that we should reverse the district court's denial of Vicom's motion for leave to file a second amended complaint. Because Vicom styled its motion as a Rule 15(a) motion for leave to file an amended complaint, and not as a Rule 59(e) motion, the district court summarily denied the motion. *See* Tr. at 3 ("I will just consider it under what it is. It is not a 59(e) motion. It's a 15(a) motion. It is de-

nied.... I think it is an inappropriate motion to bring."). On appeal, Vicom concedes that it should have expressly argued the motion under Rule 59(e) instead of Rule 15(a). Nonetheless, Vicom submits that, by denying the motion solely because it was not expressly labelled a Rule 59(e) motion, the district court abused its discretion.

We cannot accept Vicom's argument. There exists in this circuit a line of cases that require a plaintiff seeking leave to amend in the post-judgment context to file a Rule 59(e) or 60(b) motion prior to filing a Rule 15(a) motion. *See Twohy v. First Nat'l Bank,* 758 F.2d 1185, 1196 (7th Cir.1985) ("This circuit has recently clarified that once a district court enters judgment upon a dismissal (as opposed to a mere dismissal of the complaint), the plaintiff may amend the complaint under Rule 15(a), Fed.R.Civ.P., solely with 'leave of court' after a motion under Rule 59(e) or 60(b), Fed.R.Civ.P., has been made and the judgment has been set aside or vacated.") (citing *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1111 (7th Cir. 1984), *cert. denied,* 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985)).[12] Under our established caselaw, therefore, the district court did not err in declining to rule on the merits of Vicom's Rule 15(a) motion absent a prior Rule 59(e) or 60(b) motion to re-open judgment. *See Johnson v. Levy Org. Dev. Co.,* 789 F.2d 601, 611 n. 8 (7th Cir.1986) (stating that until a plaintiff "file[s] a motion to vacate the judgment against him and ha[s] that judgment lifted, the court [does] not

---

11. The amended complaint also contained supplemental state law claims pursuant to 28 U.S.C. § 1367(a). However, because federal jurisdiction was predicated solely on RICO, the district court declined to exercise supplemental jurisdiction over the state causes of action after it had dismissed the RICO claims. *See* 28 U.S.C. § 1367(c)(3).

12. *See also Figgie Int'l, Inc. v. Miller,* 966 F.2d 1178, 1179 (7th Cir.1992) ("It is well settled that after a final judgment, a plaintiff may amend a complaint under Rule 15(a) only with leave of court after a motion under Rule 59(e) or Rule 60(b) has been made and the judgment has been set aside or vacated."); *First Nat'l Bank v. Continental Ill. Nat'l Bank & Trust Co.,* 933 F.2d 466, 468 (7th Cir.1991) ("Since First National wanted

the judgment altered [to amend complaint], it had to persuade the judge to reopen the case— had therefore to file a post-judgment motion under Fed.R.Civ.P. 59(e) or 60(b)."); *Graue Mill Dev. Corp. v. Colonial Bank & Trust Co.,* 927 F.2d 988, 992 (7th Cir.1991) (stating the plaintiff did not "move to reopen the judgment of the district court under Rule 59(e) or 60(b) as it should have if it desired to amend its complaint after judgment had been entered"); *Amendola v. Bayer,* 907 F.2d 760, 765 n. 1 (7th Cir.1990) ("In this circuit, after a judgment has been entered, a party must have the judgment reopened pursuant to Federal Rule of Civil Procedure 59(e) or 60(b) and then request leave to amend pursuant to Rule 15(a).").

have to consider the merits of whether to allow him to amend his complaint").[13]

## Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED.

## CUDAHY, Circuit Judge, concurring:

I hesitate to try to add anything to such a searching and exhaustive effort to bring to ground this typically meandering and divagatory complaint. RICO is a judge's nightmare and doggedly persistent efforts to hammer it into a rational shape deserve the utmost respect even though they can rarely accomplish the impossible.

Certainly in pursuing the issue of pattern the majority has addressed the aspect of RICO upon which the Supreme Court has focused most in trying to separate the good RICO from the bad. *See H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). Pattern *is* quite fundamental to RICO and, although it too drifts in and out of focus, its prospects for bringing us to useful conclusions are as good as any other. Precedents for pattern or no-pattern are not hard to come by and I think the majority has handled them with

---

**13.** We note that there is caselaw in another circuit stating that a Rule 15(a) motion ought to be treated as a Rule 59(e) motion. *See Quartana v. Utterback*, 789 F.2d 1297, 1300 (8th Cir.1986) (stating that post-judgment Rule 15(a) motion for leave to amend should be considered a Rule 59(e) motion to alter or amend judgment because a "'motion that draws into question the correctness of the judgment is functionally a motion under Civil Rule 59(e), whatever its label'") (quoting 9 *Moore's Federal Practice*, ¶ 204.12[1] (2d ed. 1985)). Even if we were to follow this analytical path, Vicom could not prevail. A Rule 59(e) motion may be granted only if "there has been a mistake of law or fact or new evidence has been discovered that is material and could not have been discovered previously." *Figgie Int'l, Inc. v. Miller*, 966 F.2d 1178, 1179 (7th Cir.1992); *see also Deutsch v. Burlington Northern R.R.*, 983 F.2d 741, 744 (7th Cir.) (same), *cert. denied*, — U.S. —, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993). Vicom plainly cannot meet such a standard. Vicom neither filed a proposed second amended complaint with its motion for leave to file nor indicated that a proposed second amended complaint would present any new facts or evidence.

Moreover, denial of Vicom's motion was not without any justification under Vicom's proposed Rule 59(e) standard. Relying on *Dussouy v. Gulf Coast Investment Corp.*, 660 F.2d 594, 597 n. 1 (5th Cir.1981), Vicom submits that a Rule 59(e) motion for leave to amend should not be treated any differently from a Rule 15(a) motion. *Cf. Figgie Int'l*, 966 F.2d at 1180 (stating that although the issue of "whether a Rule 59(e) motion accompanied by a motion for leave to amend should be treated differently than any other Rule 59(e) motion" constitutes "a question of first impression before this court, we decline to resolve it today because Figgie's argument fails under either standard"). Under this view, following the dictates of *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), leave to amend may be denied only when there has been undue delay, bad faith, prejudice to the opponent, dilatory motive on the moving party's part, or when amendment would be futile. *See also Figgie Int'l*, 966 F.2d at 1180. We note, however, that we have stated on previous occasions that "the presumption in favor of liberality in granting motions to amend [under Rule 15(a)] is reversed after judgment has been entered." *First Nat'l Bank v. Continental Ill. Nat'l Bank*, 933 F.2d 466, 468 (7th Cir.1991); *see also Paganis v. Blonstein*, 3 F.3d 1067, 1072–73 (7th Cir.1993) ("'The right under Rule 15(a) to amend 'once as a matter of course' is lost after entry of judgment.'") (citations omitted); *Twohy v. First Nat'l Bank*, 758 F.2d 1185, 1196 (7th Cir.1985) (stating that "justice may require something less in post-judgment situations than in pre-judgment situations under Rule 15(a)").

We have little doubt that Vicom caused prejudice to the defendants by failing to request leave to amend before judgment was entered. Although Vicom disputes this, our caselaw indicates otherwise. For example, in *Figgie Int'l*, 966 F.2d at 1181, we concluded that the nonmoving party's failure to request leave to amend before judgment was entered constituted undue delay. As a result, we affirmed the denial of the plaintiff's Rule 59(e) motion. Moreover, the plaintiff in *Figgie International* had attached a proposed amended complaint with its motion for leave to amend and still was not granted leave to amend. *Id.* at 1179. Vicom, on the other hand, failed to attach its proposed second amended complaint and did not even inform the court what specifically it would do to cure the errors in the first amended complaint. Under the same circumstances, we have stated that failure to attach a proposed amendment "certainly indicates a lack of diligence and good faith." *Twohy*, 758 F.2d at 1197. We reiterated this view in *Otto v. Variable Annuity Life Insurance Co.*, 814 F.2d 1127, 1139 (7th Cir.1986), *cert. denied*, 486 U.S. 1026, 108 S.Ct. 2004, 100 L.Ed.2d 235 (1988), in which we emphasized, in denying the plaintiff's motion, that a post-judgment "motion to amend should state with particularity the grounds for the motion and should be accompanied by the proposed amendment."

aplomb and fairness—not to mention dedication.

My only reservation may be about assigning somewhat arbitrary significance to duration as such. I do not favor any bright-line (e.g., eight months, one year) duration rule. In the case before us there were more than 2000 lease transactions in the 8 months involved. If the "fraudulent acts" had been spread out over 16 months, the case would not seem to be much different. I would not think such a scheme is immune from RICO merely because it lasted eight months instead of twelve or more. *Cf. H.J. Inc. v. Northwestern Bell,* 492 U.S. at 254, 109 S.Ct. at 2908 (Scalia, J., concurring) ("Since the Court has rejected the concept of separate criminal 'schemes' or 'episodes' as a criterion of 'threatening future criminal conduct,' I think it must be saying that at least a few months of racketeering activity (and who knows how much more?) is generally for free, as far as RICO is concerned."). Even with a 16–month duration, however, I agree that there are still grounds to question fulfillment of the pattern requirement in this case.