Dale **BAJORAT**, Robert Bauer, John Holdren, Daniel Brooks, Gerry Goldman, Michael Green d/b/a JGO Associates, an Illinois partnership, Walter Kalemba, James Swanson and Robert Ellett, Plaintiffs,

v.

**COLUMBIA–BRECKENRIDGE DEVELOPMENT CORP.**, a Florida corporation, Barry Bette and Led Duke, Inc., a New York corporation, Columbia Realty Group, Inc., a Florida corporation, Gleneagles of Naples, Inc., a Florida corporation, Breckenridge, Ltd., a Florida limited partnership, Donald Led Duke, Michael F. Bette and Joseph Nicolla, individually, Defendants.

No. 95 C 50327.

United States District Court, N.D. Illinois, Western Division.

Sept. 26, 1996.

Harold C. McKenney, Campion, Curran, Rausch, Gummerson & Dunlop, P.C., Crystal Lake, IL, for Plaintiffs.

Peter B. Newton, Bettina E. Levin, John W. Guarisco, Neal, Gerber & Eisenberg and Andrew G. Neal, Chicago, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

REINHARD, District Judge.

### INTRODUCTION

Plaintiffs, Dale Bajorat, Robert Bauer, John Holdren, Daniel Brooks, Gerry Goldman, Michael Green d/b/a JGO Associates, an Illinois partnership, Walter Kalemba, James Swanson and Robert Ellett, bring a fourteen-count complaint against defendants, Columbia–Breckenridge Development Corp. ("CBD"), a Florida corporation, Barry, Bette and Led Duke, Inc. ("BBL"), a New York corporation, Columbia Realty Group, Inc. ("CRG"), a Florida Corporation, Gleneagles of Naples, Inc., a Florida corporation, Breckenridge, Ltd. ("Breckenridge"), a Florida limited partnership, Donald Led Duke ("Duke"), Michael F. Bette ("Bette") and Joseph Nicolla ("Nicolla"), alleging various federal and state law claims. Jurisdiction for

the federal claims is invoked under 28 U.S.C. § 1331 and 18 U.S.C. § 1964(a), and jurisdiction for the state law claims is invoked under 28 U.S.C. § 1367(a). Venue is premised under both 18 U.S.C. § 1965(a) and 28 U.S.C. § 1391(b). Defendants move to dismiss, or in the alternative, to transfer venue.

## FACTS

The following facts are taken from the complaint and are assumed to be true for purposes of this motion. In 1985, Breckenridge was formed as a limited partnership under the laws of the State of Florida for the purpose of developing as a residential community certain real property located in Lee County, Florida. At about that same time, agents for Breckenridge solicited plaintiffs at plaintiffs' respective places of business and/or residences in Illinois to invest money in Breckenridge as limited partners. Between 1985 and 1987, plaintiffs invested various amounts in Breckenridge in exchange for status as limited partners in the partnership. It appears that plaintiffs' troubles began in November 1988, when the managing general partner of Breckenridge, Breckenridge Development Corporation, sold 52% of its general partnership shares to CBD. (CBD also obtained a limited partnership interest in Breckenridge as well at this time.) As the new managing general partner of Breckenridge, CBD assumed responsibility for the development, pricing and selling of Breckenridge property. Duke was president and a director of CBD, and Bette was the treasurer, secretary and a director of CBD.

CBD apparently ran a cozy operation. As managing general partner, CBD engaged BBL to be the general contractor for the construction and development of Breckenridge's property. By coincidence or otherwise, Duke and Bette were executive officers and directors of BBL. CBD also hired CRG to be the marketing and sales agent for Breckenridge's property beginning in January 1992. Duke, Bette and Nicolla were directors of CRG. It is alleged that CBD, Duke, Bette and Nicolla, through Breckenridge, participated in the sale of Breckenridge property at substantially reduced rates without plaintiffs' knowledge and consent.

These sales included property sold to an individual who was an employee of BBL and to Duke's mother. It is also alleged that CBD, Duke, Bette and Nicolla, through Breckenridge, permitted various family members of Nicolla to reside in Breckenridge properties free of charge at various times between 1989 and 1991 without plaintiffs' knowledge and consent. Other allegations of wrongdoing include: (1) CBD, Duke, Bette and Nicolla's placement of Duke's uncle on the Breckenridge payroll and providing him with a substantial salary despite the fact that he had no actual duties; (2) CBD, BBL, Duke, Bette and Nicolla's removal of top soil from Breckenridge properties and diversion of proceeds from Breckenridge; (3) CBD, Duke, Bette and Nicolla's intentional failure to have Breckenridge properties available to show for sale purposes during the peek season (January–March) for three straight years; and (4) CBD, Duke, Bette and Nicolla's closure of the Breckenridge operation in the June of each year (1989–1993).

It is further alleged that on or about December 15, 1992, CBD, Duke, Bette and Nicolla misrepresented to each plaintiff, in letters sent through the U.S. mail from CBD's offices in New York to plaintiffs in Illinois, that Breckenridge was in financial jeopardy due to poor sales and the low price levels of the properties. These defendants advised each plaintiff that CBD needed to invest additional funds in the project and that each plaintiff would have to assign all profits to CBD until said contribution was repaid. CBD and Duke also warned plaintiffs that failure to make such an assignment would result in a liquidation of Breckenridge. It is alleged that these statements were untrue when made and were known to be untrue by these defendants at the time of their utterance. As a result, plaintiffs, with the exception of Ellett, agreed to an amendment to the limited partnership agreement whereby they each assigned their profits and losses from Breckenridge to CBD.

It is further alleged that CBD, Duke, Bette and Nicolla did not invest any additional funds into Breckenridge and that these defendants capitalized a fictitious debt in excess of four million dollars owed to CBD by

Breckenridge. This procedure created a large but unearned positive equity account for CBD's general and limited partnership interests and gave CBD priority distribution pursuant to plaintiffs' assignment of profits. This capitalization permitted CBD, Duke, Bette and Nicolla to retain all proceeds from the subsequent sale of Breckenridge assets.

On or about August 23, 1993, CBD and Duke again misrepresented, in letters sent to plaintiffs through the U.S. mail, that slow sales and unprofitable price levels had placed Breckenridge in serious financial trouble without revealing the true reasons therefor. CBD and Duke further advised plaintiffs that because of the losses, CBD was unable to continue funding Breckenridge's cash need and that, as a result, Breckenridge would be offered for sale. On or about December 27, 1993, Duke, Bette and Nicolla, acting through CBD, sold substantially all of Breckenridge's assets to Gleneagles at a significant financial loss without prior notice to or consent of plaintiffs. It is alleged that both Duke and Bette are shareholders and agents of Gleneagles and that Nicolla is vice president, a director and a shareholder of Gleneagles. It is further alleged that the sale of Breckenridge assets to Gleneagles occurred without a legitimate appraisal or accounting, or without any effort to advertise the property for sale.

At some point in time, more than a month after the sale, CBD and Duke informed plaintiffs of the sale and that, because the sale was made at a loss, there were no proceeds to be distributed to plaintiffs. It is alleged that Nicolla was the sole director and officer of Gleneagles and that Gleneagles was created by CBD, Duke, Bette and Nicolla for the sole purpose of buying the assets of Breckenridge at a loss.

Count I, against CBD, Duke, Bette and Nicolla, alleges a claim for breach of fiduciary duties under Florida Statute Chapter 620.66. Counts II and III, against all defendants, allege claims for fraud and conspiracy to commit fraud, respectively. Counts IV, V, VI and VII, against all defendants, allege claims for mail fraud, 18 U.S.C. § 1341, wire fraud, 18 U.S.C. § 1343, interference with commerce, 18 U.S.C. § 1951, and interstate and foreign travel or transportation in aid of racketeering enterprises, 18 U.S.C. § 1952, respectively. Count VIII, against all defendants, alleges a claim for unfair trade practices under Florida Statute Chapter 501.204. Each of the foregoing counts seeks a money judgment for the loss of each plaintiffs' investment capital and profits. Each count also seeks exemplary damages, attorney fees, costs, and an accounting itemizing all transactions, profits and loss between and among each defendant for the years 1989 to the present.

In rather peculiar fashion, Counts IX–XIV allege claims under the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1964. Counts IX–XIII allege substantive violations of RICO under 18 U.S.C. § 1962.[1] For Count IX, the underlying predicate acts of racketeering are the acts of fraud alleged in Count II—for Count X, the acts of mail fraud alleged in Count IV; for Count XI, the acts of wire fraud alleged in Count V; for Count XII, the acts of interference with commerce alleged in Count VI; and for Count XIII, the acts of interstate and foreign travel or transportation in aid of racketeering enterprises alleged in Count VII. Count XIV alleges a conspiracy to violate RICO under 18 U.S.C. § 1962(d), and, as predicate acts of racketeering, alleges the conspiracy to commit fraud in Count III and the various substantive RICO violations alleged in Counts IX–XIII.

## CONTENTIONS

Defendants move to dismiss Counts IV–VII on the grounds that those criminal statutes do not provide private rights of action. As to the RICO counts, defendants contend that each count fails to sufficiently allege a "pattern of racketeering activity" as defined by the case law. In addition, defendants contend these counts should be dismissed

---

1. Although the complaint does not specify the particular subsection, these counts most likely allege violations of section 1962(c), which prohibits the conducting of an "enterprise's affairs through a pattern of racketeering activity," as each count alleges that CBD is an "enterprise" and that Duke, Bette and Nicolla conducted its affairs through a pattern of racketeering activity.

because (1) plaintiffs do not set forth the specific section of RICO that defendants allegedly violated; (2) there is no allegation of a RICO "person" in the complaint; and (3) plaintiffs' claims for fraud and the predicate acts of mail and wire fraud are not plead with particularity as required by Fed.R.Civ.P. 9(b). Upon dismissal of the federal claims, defendants contend that this court should decline to exercise supplemental jurisdiction over the remaining state law claims and dismiss the entire action. In the alternative, defendants contend that venue is improper under both 18 U.S.C. § 1965(a) and 28 U.S.C. § 1391(b) and that this action should be either dismissed or transferred to the U.S. District Court for the Middle District of Florida.

As to Counts IV–VII, plaintiffs contend that these counts are set forth as predicate acts necessary to state a RICO claim and that because RICO requires the inclusion of predicate acts, which involve violations of certain criminal statutes, there is a statutory basis for inferring that a civil cause of action exists under these statutes if made in the context of a RICO claim. As to the RICO counts, plaintiffs contend that the complaint sufficiently alleges a pattern of racketeering activity as defined by the case law. As to the remaining alleged deficiencies, plaintiffs contend that the complaint states that the RICO claims are made under 18 U.S.C. § 1962(d), as well as under the general provisions of 18 U.S.C. § 1964, that the complaint clearly identifies the RICO persons in a prefatory paragraph in each RICO count and that the complaint sufficiently sets forth allegations of fraud by alleging the time, place and general content of the alleged misrepresentations, as well as the identity of each defendant. As to the issue of venue, plaintiffs point out that defendants rely upon a prior version of 28 U.S.C. § 1391 and that the present, amended version makes venue proper, as a substantial part of the events or omissions took place in this district. As to venue under 18 U.S.C. § 1965(a), plaintiffs contend that venue is proper under that statute because defendants transacted their affairs in this district during the period relevant to the complaint. Last, plaintiffs contend that, to the extent defendants raise a forum non conveniens is-

sue, defendants have not shown the Middle District of Florida to be a clearly more convenient forum.

## DISCUSSION

Dismissal of a complaint is appropriate only if it is clear the plaintiff can prove no set of facts consistent with the complaint which would entitle him to relief. *Jones v. General Elec. Co.*, 87 F.3d 209, 211 (7th Cir.1996). In evaluating the complaint, the court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the plaintiff. *Hager v. City of West Peoria*, 84 F.3d 865, 868–69 (7th Cir.1996).

### A. Counts IV–VII

As noted earlier, Counts IV, V, VI and VII allege claims for mail fraud, 18 U.S.C. § 1341, wire fraud, 18 U.S.C. § 1343, interference with commerce under the Hobbs Act, 18 U.S.C. § 1951, and interstate and foreign travel or transportation in aid of racketeering enterprises under the Travel Act, 18 U.S.C. § 1952, respectively. Each count seeks a money judgment for the loss of each plaintiffs' investment capital and profits, exemplary damages, attorney fees, costs, and an accounting itemizing all transactions, profits and loss between and among each defendant for the years 1989 to the present. Although these counts are incorporated by reference into the RICO counts as well, each count is clearly presented as a separate cause of action, separate and distinct from the RICO counts. Thus, the complaint belies plaintiffs' contention in their response brief that Counts IV–VII are merely alleged as predicate acts for the RICO counts.

 Plaintiffs' contention that Counts IV–VII should stand because they are made within the context of a RICO action is not well-taken. Rarely is there a private right of action under a criminal statute. *Chrysler Corp. v. Brown*, 441 U.S. 281, 316, 99 S.Ct. 1705, 1725, 60 L.Ed.2d 208 (1979). Unlike RICO, none of these criminal statutes contain an express private right of action. Although a private right of action may be implied from a criminal statute, *see Cort v. Ash*, 422 U.S. 66, 79, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975), such implied right will

**1378**

only exist where there is a factual basis for believing that Congress so intended. *See Thompson v. Thompson*, 484 U.S. 174, 179, 108 S.Ct. 513, 516, 98 L.Ed.2d 512 (1988). Plaintiffs have not cited, nor has this court found, any decision holding that these statutes carry an implied private right of action. While it is true that the Seventh Circuit has not addressed the issue of whether these criminal statutes carry an implied private right of action, the court finds this fact to be little justification for advancing these counts, as other courts have uniformly held that these statutes do not carry an implied private right of action. *See, e.g., Official Publications, Inc. v. Kable News Co.*, 884 F.2d 664, 667 (2d Cir.1989) (involving mail and wire fraud statutes); *Wilcox v. First Interstate Bank of Oregon, N.A.*, 815 F.2d 522, 533 n. 1 (9th Cir.1987) (Boochever, J., dissenting) (involving mail fraud statute); *Ryan v. Ohio Edison Co.*, 611 F.2d 1170, 1177–79 (6th Cir. 1979) (involving mail fraud statute); *Bell v. Health–Mor, Inc.*, 549 F.2d 342, 346 (5th Cir.1977) (involving mail fraud statute); *Napper v. Anderson*, 500 F.2d 634, 636 (5th Cir.1974) (involving wire fraud statute); *Wiggins v. Philip Morris, Inc.*, 853 F.Supp. 458, 466 (D.D.C.1994) (involving mail and wire fraud statutes); *Barrett v. City of Allentown*, 152 F.R.D. 50, 56 (E.D.Pa.1993) (involving mail fraud statute, Hobbs Act and Travel Act); *Schwartz v. F.S. & O. Assoc., Inc.*, No. 90 C 1606, 1991 WL 208056, at *2–3 (S.D.N.Y. Sept. 27, 1991) (involving Travel Act); *John's Insulation, Inc. v. Siska Constr. Co., Inc.*, 774 F.Supp. 156, 163 (S.D.N.Y.1991) (involving Hobbs Act); *American Computer Trust Leasing v. Jack Farrell Implement Co.*, 763 F.Supp. 1473, 1497 (D.Minn.1991) (involving Hobbs Act), *aff'd and remanded*, 967 F.2d 1208 (1992), *cert. denied*, 506 U.S. 956, 113 S.Ct. 414, 121 L.Ed.2d 338 (1992); *Peterson v. Philadelphia Stock Exch.*, 717 F.Supp. 332, 335–36 (E.D.Pa.1989) (involving Hobbs Act); *Creech v. Federal Land Bank of Wichita*, 647 F.Supp. 1097, 1099 (D.Colo.1986) (involving mail fraud statute and Hobbs Act); *Milburn v. Blackfrica Promotions, Inc.*, 392 F.Supp. 434, 435 (S.D.N.Y.1974) (involving mail fraud statute); *see also Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 501, 105 S.Ct. 3292, 3292–93, 87 L.Ed.2d 346 (1985) (Marshall, J., dissenting) (noting uniformity among lower courts).. Accordingly, the court grants defendants' motion with respect to Counts IV, V, VI and VII and dismisses these counts with prejudice.

## B. Counts IX–XIV

To state a RICO claim, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima*, 473 U.S. at 496, 105 S.Ct. at 3285. A "pattern of racketeering" consists of at least two predicate acts of racketeering committed within a ten-year period. 18 U.S.C. § 1961(5); *Emery v. American General Fin., Inc.*, 71 F.3d 1343, 1348 (7th Cir. 1995). Predicate acts are acts indictable under a specified list of criminal laws found at 18 U.S.C. § 1961(1). The Supreme Court has emphasized that the section 1961(5) requirement of two predicate acts is a minimum requirement and that, while two may be necessary, two may not always be sufficient. *Sedima*, 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14. The pattern element is not formed by "sporadic activity;" rather, the Court has held that the term 'pattern' itself requires a showing of a relationship between the predicates and a threat of continuing activity. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 2900–01, 106 L.Ed.2d 195 (1989). Thus, in order to establish a pattern of racketeering activity, a plaintiff must satisfy the continuity plus relationship test as set forth in *H.J. Inc.;* that is, a plaintiff must show that the racketeering predicates are related and that they amount to or pose a threat of continued criminal activity. *Id.* Criminal conduct will be related if the conduct "embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J. Inc.*, 492 U.S. at 240, 109 S.Ct. at 2901. Defendants do not contend that the various predicate acts alleged in the complaint are sporadic or unrelated. Instead, defendants raise the issue of whether the allegations in the complaint satisfy the continuity prong of the pattern element.

Continuity is both a "closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241, 109 S.Ct. at 2902. In order to establish continuity over a closed period, a plaintiff must prove a series of related predicates enduring over a "substantial period of time." *Id.* at 242, 109 S.Ct. at 2902. In analyzing the continuity prong in a closed period case, the Seventh Circuit directs district courts to apply the factors set out in *Morgan v. Bank of Waukegan,* 804 F.2d 970, 975 (7th Cir. 1986) "with an eye toward achieving a natural and commonsense result, recognizing that Congress was concerned in RICO with long-term criminal conduct." *Vicom, Inc. v. Harbridge Merchant Servs., Inc.,* 20 F.3d 771, 780 (7th Cir.1994). These factors include the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries. It is with these principles in mind, therefore, that the court considers each RICO count individually.[2]

### 1. Count IX

The court has little difficulty in finding that Count IX does not state a RICO claim. This count has several problems, not the least of which is that it does not allege two predicate acts which are indictable under the specified list of criminal laws found at 18 U.S.C. § 1961(1). As predicate acts of racketeering, Count IX relies exclusively upon the allegations of common law fraud alleged in Count II. Although Count II alleges that defendants engaged in a scheme to defraud plaintiffs, nowhere is it alleged that such scheme violated any federal or state criminal laws. Acts of common law fraud that do not implicate the mails or wires do not constitute racketeering activity. *Tel–Phonic Servs., Inc. v. TBS Int'l, Inc.,* 975 F.2d 1134, 1139

(5th Cir.1992); *Fleet Credit Corp. v. Sion,* 893 F.2d 441, 445 (1st Cir.1990). The court cannot apply the *Morgan* factors to the allegations of Count IX without having any valid predicate acts to evaluate. Accordingly, the court dismisses Count IX.

### 2. Count X

As predicate acts of racketeering, Count X relies exclusively upon the allegations of mail fraud contained in Count IV. Specifically, Count IV alleges that defendants used the mails on an "annual" basis to carry out their fraudulent scheme by mailing plaintiffs income tax forms which misrepresented Breckenridge's profits and losses. In addition, it is alleged that defendants sent copies of letters and financial statements to plaintiffs "on numerous occasions" which indicated that sales were low and that Breckenridge was on the verge of bankruptcy. Apart from defendants' use of the mails on December 15, 1992 and on August 23, 1993, one is left to speculate as to the exact dates and number of times defendants used the mails.

The Seventh Circuit has been rather candid with respect to allegations such as these—it "does not look favorably on relying on many instances of mail and wire fraud to form a pattern," *see Vicom,* 20 F.3d at 781 (collecting cases), and its jurisprudence is "replete with examples of failed attempts to dress up state fraud claims as suave RICO cases using the expansive definitions of mail and wire fraud," *see Uniroyal Goodrich Tire Co. v. Mutual Trading Co.,* 63 F.3d 516, 523 (7th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 916, 133 L.Ed.2d 846 (1996). The reason for this is that the existence of a multiplicity of mailings may be no indication of the requisite continuity of the underlying fraudulent activity. *Vicom,* 20 F.3d at 781; *Midwest Grinding Co., Inc. v. Spitz,* 976

---

**2.** The parties seem to address this issue on a rather global level, considering all the allegations in the complaint irrespective of what is contained in, or excluded from, each individual RICO count. Were it the case that there was only one RICO count, considering the allegations of the complaint *in toto* might be the proper course to take. This is not the case here, however, as plaintiffs have sought to spread defendants' conduct into six different and independent RICO counts. Because plaintiffs, as masters of their complaint, elected to plead their claims in this manner, the court must consider the allegations in each RICO count to the exclusion of all other allegations not contained therein.

F.2d 1016, 1024–25 (7th Cir.1992). Thus, the mere fact that there may have been numerous mailings does not necessarily support a finding of continuity.

 The next factor to consider is the length of time over which the predicate acts were committed. Duration is perhaps the closest thing our circuit has to a brightline continuity test. *Vicom,* 20 F.3d at 780. Count X alleges only two specific uses of the mails—once in December 1992 and once in August 1993. Although Count X purports to allege other uses of the mails, it sets forth no specifics about these other uses of the mails other than to provide the general nature of what the letters contained. Without knowing the dates and specific number of these mailings, the court cannot consider these activities as predicate acts. *See Emery,* 71 F.3d at 1348 (failure to plead names and dates of other transactions precludes those activities from being considered as predicate acts); *Miller v. Gain Fin., Inc.,* 995 F.2d 706, 709 (7th Cir.1993) (holding allegations of "similar business transactions" with "similar results" to be insufficient as predicate acts absent more specifics). Hence, when all the verbiage of Count X is weeded out, the court is left with only two predicate acts. Two predicate acts spanning a time frame of only eight months do not satisfy the duration requirement. *Id.; see also Midwest Grinding,* 976 F.2d at 1024 (collecting cases and respective time frames).

As to the variety of predicate acts, there is none. Count X merely alleges violations of the mail fraud statute. This lack of variety weighs against a finding of continuity. *See Vicom,* 20 F.3d at 781; *Midwest Grinding,* 976 F.2d at 1024.

 By the same token, Count X lacks the presence of separate schemes. Notably, the complaint speaks at all times of one fraudulent scheme to defraud. In their response brief, plaintiffs attempt to distance themselves from the language of their complaint and point to various specific acts in an attempt to convert defendants' conduct into numerous schemes. In any event, this court is neither bound by language of the complaint nor by plaintiffs' characterization of the complaint, and it may look beyond such matters in determining whether there are a variety of schemes alleged. *See Vicom,* 20 F.3d at 781. Here, the court finds the complaint to allege only one scheme, the object of which was to divest plaintiffs of their investment capital and profits. Thus, while not dispositive on the issue of continuity, the fact that there is but one scheme alleged weighs against a finding of continuity.

Likewise, Count X lacks allegations that plaintiffs suffered distinct injuries. Plaintiffs contend that they suffered distinct injuries because they each invested different amounts of money in Breckenridge and because they each lost "business opportunities." This characterization of the injuries is a bit too charitable, and in the court's opinion, too narrow. Plaintiffs suffered a loss of investment capital and potential profits, and the fact that they lost different amounts because they each invested different amounts does not make their various injuries distinct. *See United States Textiles, Inc. v. Anheuser–Busch Co.,* 911 F.2d 1261, 1269 (7th Cir.1990) (finding injuries which resulted each time defendant shipped goods under a contract to be economically identical).

The last factor, the number of victims, is perhaps the only factor which truly weighs in favor of finding continuity in this case. The court is of the opinion, however, that it is insufficient to sustain a finding of continuity. The predicate acts in this count are merely two acts of mail fraud which covered a relatively short period of time. Defendants' conduct involved only a single scheme, from which plaintiffs suffered the same type of injury. With common sense as its guide in evaluating the *Morgan* factors, the court cannot conclude that this is the type of long-term criminal activity Congress sought to eradicate by enacting RICO. Inherent in the pattern element is that there be some sort of long-term criminal activity that carries some quantum of threat to society; Count X contains none of these trappings.

 Having concluded that this count does not satisfy the continuity prong as a closed-ended scheme, the court considers whether it satisfies the continuity prong as an open-ended scheme. Open-ended continu-

ity is present when (1) a specific threat of repetition exists, (2) the predicate acts are a regular way of conducting an ongoing legitimate business, or (3) the predicate acts can be attributed to a defendant operating as part of a long-term association that exists for criminal purposes. *Vicom*, 20 F.3d at 782 (citing *H.J., Inc.*, 492 U.S. at 242–43, 109 S.Ct. at 2902–03). The Seventh Circuit has repeatedly stated that schemes which have a clear and terminable goal and which have a natural ending point cannot support a finding of any specific threat of repetition that would constitute open-ended continuity. *See, e.g., Vicom*, 20 F.3d at 782; *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 922 (7th Cir. 1992); *Olive Can Co. v. Martin*, 906 F.2d 1147, 1151 (7th Cir.1990). Defendants' scheme to deprive plaintiffs of investment capital ended once Breckenridge's assets were liquidated. Thus, there is no threat of repetition in this case. Plaintiffs do not contend, nor could they likely contend, that this was a regular way of conducting an ongoing legitimate business or that the association between the defendants in this case is long-term and exists for criminal purposes. Hence, plaintiffs cannot establish that this count satisfies the continuity prong as an open—ended scheme. Accordingly, the court dismisses Count X for failure to state a claim.

### 3. Count XI

■ The predicate acts which form the basis of Count XI are the acts of wire fraud alleged in Count V. The allegations of wire fraud, however, are rather vague. It is alleged that defendants "periodically" misrepresented the financial status of Breckenridge to plaintiffs through the use of interstate wires between Florida, New York and Illinois. It is further alleged that defendants made use of interstate wires "on numerous occasions" to misrepresent the sales levels of Breckenridge. The court is left to speculate as to which specific defendant made use of the wires on each particular occasion, the dates of such use, as well as the exact frequency of such use. As stated earlier in the analysis of Count X, these type of vague allegations are insufficient to constitute predicate acts. *See Emery*, 71 F.3d at 1348;

*Miller*, 995 F.2d at 709. Thus, Count XI is subject to dismissal on this basis alone.

■ Even if Count XI advanced numerous specific instances of wire fraud, this court would be unable to find requisite continuity in this count. Numerous acts of wire fraud rarely constitute a pattern of racketeering in this circuit. The absence of significant duration, the lack of variety of the predicate acts, the lack of separate schemes and the identical injuries sustained by plaintiffs all mitigate against a finding of continuity. Like the allegations in Count X, Count XI has none of the trappings of long-term criminal activity which carries some measurable threat to society. Thus, Count XI cannot satisfy the continuity prong as a closed-ended scheme. Similarly, Count XI contains no additional allegations which could support a finding that a specific threat of repetition exists. Hence, for the reasons stated in this court's analysis of Count X, Count XI cannot satisfy the continuity prong as an open-ended scheme either. Accordingly, for all these reasons, the court dismisses Count XI.

### 4. Count XII

■ As predicate acts of racketeering, Count XII relies exclusively upon the allegations of Count VI, the Hobbs Act count. While Count XII speaks of "related, repeated and intentional" violations of the Hobbs Act in alleging the predicate acts, Count XII adds no additional allegations beyond what is alleged in Count VI. A charitable reading of Count VI, however, reveals only one violation of the Hobbs Act. Thus, Count XII fails to allege two predicate acts as required under 18 U.S.C. § 1961(5). The court, therefore, dismisses Count XII on this basis.

### 5. Count XIII

■ Like the foregoing RICO counts, Count XIII relies exclusively upon only a portion of defendants' alleged conduct. As predicate acts of racketeering, Count XIII relies upon the allegations in Count VII, the Travel Act count. It is alleged that defendants physically travelled in interstate commerce between Florida, New York and Illinois. This allegation, however, is even more

vague than the allegations of wire fraud, as it is not even alleged that this occurred on a regular or semi-frequent basis. Thus, the allegations that defendants violated the Travel Act are insufficient for the same reasons this court found the allegations of mail fraud to be insufficient.

It should be noted that Count VII, which forms the basis for Count XIII's predicate acts for racketeering, is slightly different from the other counts alleging violations of federal criminal statutes in that Count VII also incorporates the allegations of mail and wire fraud in support of the jurisdictional element of the Travel Act. In other words, defendants' use of the mails or wires may have, at the same time, violated the Travel Act. In the court's judgment, this adds little, if anything, to the picture. The allegations of mail and wire fraud, considered separately or together, do not support a finding of continuity. The fact that the conduct complained of may have also violated the Travel Act adds little variety to the predicate acts and adds nothing to the other *Morgan* factors. Thus, this court has little difficulty in concluding that the allegations in Count XIII fail to satisfy the continuity prong. For these reasons, therefore, the court dismisses Count XIII.

### 6. Count XIV

Count XIV is the pinnacle of all RICO counts in this complaint. It alleges a conspiracy to violate RICO under section 1962(d), and in support thereof, incorporates the allegations of conspiracy to commit fraud in Count III and the various substantive violations of RICO alleged in Counts IX–XIII. The conspiracy provision under section 1962(d) makes it unlawful for any person to conspire to violate section 1962(a), (b) or (c) of RICO. The conspiracy provision, unlike the other sections, is not a substantive RICO offense; that is, section 1962(d) merely makes it illegal to conspire to violate any of the substantive sections of RICO. *MCM Partners, Inc. v. Andrews–Bartlett & Assocs., Inc.,* 62 F.3d 967, 979 (7th Cir.1995). Thus, the fact that this court has already dismissed the substantive RICO counts does not impact the viability of this conspiracy count.

In order to conspire to violate RICO, a conspirator must agree to two things: first, he must agree to conduct or participate in the affairs of an enterprise through a pattern of racketeering activity; and second, he must agree to the commission of at least two predicate acts. *Gagan v. American Cablevision, Inc.,* 77 F.3d 951, 961 (7th Cir.1996). A conspirator need not agree to actually committing the predicate acts himself or even participate in the commission of those acts so long as he agrees that the acts would be committed on behalf of the conspiracy. *MCM Partners,* 62 F.3d at 980. To allege a conspiracy to violate RICO under section 1962(d), therefore, plaintiffs must allege at least three things: (1) that each defendant agreed to conduct the affairs of an enterprise; (2) that each defendant agreed to the commission of at least two predicate acts; and (3) that each defendant knew that those predicate acts were part of a pattern of racketeering activity. *Schiffels v. Kemper Fin. Servs., Inc.,* 978 F.2d 344, 352 (7th Cir.1992). "Conclusory allegations of 'conspiracy' are not sufficient to state a claim under section 1962(d);" rather, a RICO plaintiff must allege facts from which one can infer each defendant's agreement to violate RICO. *Id.; Damato v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 878 F.Supp. 1156, 1163 (N.D.Ill.1995).

Turning to the allegations in Count XIV, the court considers whether plaintiffs have alleged the required criminal agreements. The allegations concerning the scheme to commit fraud are insufficient to infer an agreement to violate RICO for the simple reason that those allegations merely concern an agreement to commit common law fraud, a state tort; they do not concern an agreement to violate RICO, a federal criminal statute. Apart from the allegations concerning the scheme to commit fraud, Count XIV speaks little of a conspiracy, let alone of an agreement to violate RICO and an agreement to commit at least two predicate acts. The closest Count XIV comes to alleging a conspiracy is found in paragraph 87, wherein it is alleged that the "fraudulent scheme to deprive Plaintiffs of their respective interests in Breckenridge, in violation of

18 U.S.C. § 1964 et seq., perpetrated by all Defendants *acting in a conspiracy* constitutes a violation of 18 U.S.C. § 1962(d)." [emphasis added] This is far from sufficient. There are no allegations from which the court can infer that each defendant agreed to conduct the affairs of an enterprise through a pattern of racketeering activity or that each defendant agreed to the commission of at least two predicate acts. Accordingly, the court dismisses Count XIV for failure to state a claim.

The court is perplexed by plaintiffs' method of pleading in this case. Instead of alleging one RICO count, or two at the most (i.e., one substantive count and one conspiracy count), plaintiffs spread defendants' conduct over six RICO counts. By diluting their claims in such a manner, they exposed their complaint to a "divide and conquer" type of attack to the pleading. As demonstrated, none of these counts, standing alone, alleges a RICO violation. Even considering the allegations in this complaint *in toto,* however, the court has grave doubts that plaintiffs can amend their complaint to advance a single RICO count which can survive scrutiny under the case law of this circuit. While this court is not unsympathetic to plaintiffs' alleged plight, this court does not appear to be the appropriate forum for their claims. Many RICO plaintiffs have persisted in "trying to fit a square peg in a round hole by squeezing garden-variety business disputes into civil RICO actions," *see Midwest Grinding Co., Inc.,* 976 F.2d at 1025, and most have failed. Even if the RICO claims were consolidated into one single claim, based on the allegations thus far, the court would still be of the opinion that the requisite continuity is lacking. All of the predicate acts alleged thus far appear to be part of a single scheme and transaction from which plaintiffs suffered identical injuries. While it may have taken a period of two or three years to accomplish, plaintiffs suffered, in essence, only one injury each. Moreover, while at first blush it appears that there is variety among the predicate acts, a closer examination reveals otherwise. In most instances, the same conduct forms the basis for the various mail fraud, wire fraud, Hobbs Act and Travel Act violations. Thus, the com-

plaint suffers from far more serious defects than plaintiffs' method of splitting up defendants' conduct into multiple RICO counts. Be that as it may, the dismissal of the RICO counts are without prejudice. Should plaintiffs seek leave to amend, they shall file and present to this court an appropriate motion with a proposed amended complaint attached as an exhibit within twenty (20) days of this order. Plaintiffs should be mindful of Rule 11 in filing any further pleadings. Failure to file a motion (and an amended complaint attached as an exhibit) shall result in the dismissal of these claims with prejudice without further notice.

### C. Counts I–III and VIII

Upon dismissal of the federal claims, defendants request this court to decline to exercise jurisdiction over the supplemental state law claims in Counts I–III and VIII. Plaintiffs' response brief does not address this court's exercise of supplemental jurisdiction in the event all federal claims are dismissed. The general rule is that when the federal claims are dismissed prior to trial, the district court should decline to exercise supplemental jurisdiction over the supplemental state law claims. *Carr v. CIGNA Sec., Inc.,* 95 F.3d 544, 546–47 (7th Cir.1996). A district court must have good reason for retaining jurisdiction and must make specific findings as to the balance of judicial economy, convenience, fairness and comity in order to retain jurisdiction. *Wright v. Associated Ins. Co., Inc.,* 29 F.3d 1244, 1252 (7th Cir.1994). No such factors justify a retention over plaintiffs' state law claims, as the statute of limitations for plaintiffs' state law claims was tolled during the pendency of this action pursuant to 28 U.S.C. § 1367(d) and will continue to be tolled for an additional thirty days after dismissal. Accordingly, should plaintiffs fail to file an appropriate motion seeking leave to amend their complaint to reallege any of the federal claims within twenty days of this order, the supplemental state law claims in Counts I–III and VIII shall be dismissed without further notice pursuant to 28 U.S.C. § 1367(c)(3).

### CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted. Counts IV–VII

are dismissed with prejudice, and Counts IX–XIV are dismissed without prejudice. Plaintiffs shall have twenty (20) days to seek leave to amend the complaint. Failure to do so will result in a dismissal of Counts IX–XIV with prejudice as well as a dismissal of Counts I–III and VIII pursuant to 28 U.S.C. § 1367(c)(3) without further notice. Defendants' motion to dismiss for lack of venue, or in the alternative, to transfer venue, is denied as moot at this time.